No. 71,337

JAMES E. KELLY and ELLEN L. KELLY, *Appellants/Cross-appellees*, v. PRIMELINE ADVISORY, INC., PRIMELINE SECURITIES CORP., DONALD E. BAXTER, PRIMELINE FINANCIAL GROUP, INC., FRED F. LIEBAU, JR., JAMES G. WOODALL and BRUCE W. BERTSCH, *Appellees/Cross-appellants*.

(889 P.2d 130)

Opinion filed February 3, 1995.

*Susan R. Schrag*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause and was on the briefs for appellants/cross-appellees.

*Michael G. Jones*, of Martin, Pringle, Oliver, Wallace & Swartz, L.C., of Wichita, argued the cause, *Terry L. Malone*, of the same firm, was with him on the brief for appellees/cross-appellants Primeline Advisory, Inc., Primeline Securities Corp., Primeline Financial Group, Inc., Fred F. Liebau, Jr., James G. Woodall, and Bruce W. Bertsch.

The opinion of the court was delivered by

SIX, J.: This is a first impression statute of limitations case arising under K.S.A. 17-1268(a), the civil liabilities section of the Kan-

sas Securities Act (the Act), K.S.A. 17-1252 *et seq*. The district court concluded that the statutory claims of James and Ellen Kelly were barred by K.S.A. 60-512(2), a three-year statute of limitations. The paramount question is when a fraud-based K.S.A. 17-1268(a) action commences under K.S.A. 60-512(2)—upon discovery of the fraud or at the time of sale of the security.

The Kellys appeal the decision entered against them on defendants' motion for summary judgment. We apply a discovery rule to K.S.A. 60-512(2), reverse the summary judgment, and remand for further proceedings. Defendants Primeline Advisory, Inc., Primeline Securities Corp., Primeline Financial Group, Inc., Fred F. Liebau, Jr., James G. Woodall, and Bruce W. Bertsch cross-appeal, challenging the effect of various statements in the district court's order. Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from Court of Appeals on our own motion). We will refer to all defendants as "Primeline," unless we are specifically discussing factual circumstances involving defendant Don Baxter. Baxter, who has separate counsel, has not filed a brief on appeal. His interests are identical to the other defendants.

## Facts

The Kellys approached Baxter for investment advice and assistance in February 1986. Baxter, who advertised as a certified financial planner, worked for Primeline Advisory, Inc., a financial planning and investment services firm, and its sister corporation, Primeline Securities Corp., a registered broker-dealer of securities. The Kellys had read about Baxter in Money magazine. At the time the Kellys came to Baxter, their retirement money was in a CD. The Kellys' position is that they told Baxter they did not want risk; if they had wanted risk they would have invested in the stock market. They told him that they wanted to have something when they retired. They told him they had four children, they wanted all their children to go to college, and they could not afford to lose the money. The Kellys and Baxter, on behalf of Primeline Advisory, Inc., signed a letter of engagement on February 3, 1986. Baxter and Primeline Advisory, Inc., promised to "recommend and educate [the Kellys] about investments suitable

to [their] income tax, estate and family circumstances, liquidity needs, retirement goals, objectives and preferences and economic resources."

Over the next three years, Baxter recommended and the Kellys agreed to 21 different investments in various limited partnerships and other assorted securities. The first purchase occurred on March 2, 1986, the last on April 21, 1989. The Kellys invested a total of $172,941.25.

Heavy losses followed, as several limited partnerships went through bankruptcy. According to the Kellys, Baxter had persuaded them to invest in "high risk, high-commission limited partnerships and direct investments" without adequately informing them of the risks of each investment. The Kellys also contend Baxter did not adequately consider whether such high-risk investments were suited to their investment goals and portfolio. Baxter and Primeline argue the Kellys knew or should have known of the nature and risk of each investment because they received prospectuses or other offering documents at or near the time of each purchase.

The Kellys filed the instant action on January 8, 1993, seeking relief afforded under K.S.A. 17-1268(a). In addition, they sought damages and equitable relief through common-law claims of breach of fiduciary duty, fraud, negligence, and breach of contract. The common-law fraud claim is no longer in the case.

Primeline argued initially in the district court that the common-law and statutory claims accrued when the Kellys discovered or reasonably should have discovered the facts establishing their claims, except for the breach of contract claim which accrued at the time of the breach. Under the undisputed facts, Primeline contended the Kellys' claims were untimely, even if triggered by "discovery." The Kellys agreed with Primeline about which statutes of limitations applied to each claim and how each statute would be triggered. However, they contended that the question of when they discovered or should have discovered the facts establishing their claims were issues of fact for a jury to decide; consequently, summary judgment was not proper.

At the hearing on Primeline's motion for summary judgment, the trial judge raised the question which is now an issue in this

appeal: Is there is a "discovery rule" under K.S.A. 60-512(2)? Primeline had conceded orally and in a supporting memorandum that a discovery rule applied. In closing, after the trial judge had twice raised the issue, Primeline's counsel tactfully modified his position on the existence of a discovery rule under 60-512(2):

"Now, concerning the discovery rule, on the Kansas Securities Act violation, in our brief we do follow what the [*Mid Kansas Fed. S. & L. v. Orpheum Theater Co.*, 810 F. Supp. 1184, 1192-93 (D. Kan. 1992),] case says, but that is a Federal case. This Court is not bound by that decision, nor is this Court bound by what we say in our brief. If this Court decides that both parties are wrong, discovery rule does not apply to the three year statute of limitations, so be it."

That is exactly what the district court decided. The district court's memorandum opinion reasoned:

"Plaintiff's causes of action (and they are many since each purchase of securities constitutes a separate cause of action) arise under the 'Blue Sky Laws' (K.S.A. 17-1252 *et seq.*)"

. . . .

"The issue, for determination by the Court, is: Has the statute of limitation run on each of plaintiffs' claims?

"The parties agree that the appropriate statute of limitation is K.S.A. 60-512 which reads as follows:

'The following actions shall be brought within three (3) years . . . (2) An action upon a liability created by statute other than a penalty with forfeiture.'

The last sale of a security was in 1988. This action was filed January 3, 1993. Therefore, any cause of action which accrued before January 3, 1990, is barred by passage of time. But plaintiffs say: 'We didn't know we had a right to sue until just before we filed the case.' Plaintiffs did not include in their Rule 141 statement any factual matters on their discovery of their causes of action. Plaintiffs' attorney said plaintiffs became aware they had been wronged in a conversation with an investigator from the Securities Commission in mid 1992.

"K.S.A. 60-512 does not provide for suspension of the statute of limitations until discovery of the cause of action. For me to write such a suspension into the statute, I would have to write something into the statute a provision of which there is no hint in the wording of the statute. K.S.A. 60-513(a)(3) does provide for a suspension of a statute of limitations until it is discovered in plain language. Again, K.S.A. 60-512 contains no such language and no case interpreting it mentions any exception.

"Plaintiffs say federal law provides for a delay until discovery and then the statute runs. The two laws are written with the same purpose. I find, by my own research, the case of *Lampf v. Gilbertson*, 501 U.S. 350, 115 L. Ed. 2d

321, 111 S. Ct. 2773 (1991). This case provides that the federal statute of one year is suspended until discovery, but there is an absolute bar three years after the sale. Federal law provides for a lesser period of limitation than Kansas law. Kansas law is three years, no more and no less. Federal law provides for at least a year, but in no case more than three years. Federal law does not help plaintiffs' position.

. . . .

"The Court has a new issue of a statute of limitation, but the issue presented must be determined for defendant."

## DISCUSSION

This appeal involves statutory construction. The interpretation of a statute is a question of law. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). Our standard of review is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

### The Kellys' Claims Under the Act

The Kellys asserted claims under K.S.A. 17-1268(a), which provides in part:

"(a) Any person, who offers or sells a security in violation of K.S.A. 17-1254 or 17-1255 or offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading (the buyer not knowing of the untruth or omission) and who does not sustain the burden of proof that such person did not know and in the exercise of reasonable care could not have known of the untruth or omission, is liable to the person buying the security from such person, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at 15% per annum from the date of payment, costs, and reasonable attorney fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the buyer no longer owns the security."

K.S.A. 17-1268(a) contemplates three types of civil actions arising from an offer or sale of a security: (1) an action alleging a violation of K.S.A. 17-1254, which requires that sellers of securities be registered with the State; (2) an action alleging a violation of K.S.A. 17-1255, which prohibits selling unregistered securities; and (3) an action alleging a material and misleading misrepresentation or omission by one who has offered or sold a security (*i.e.*, "fraud-based" action).

The Kellys assert two of the three K.S.A. 17-1268(a) claims. They contend that: (1) Baxter made material and misleading misrepresentations or omissions in selling securities to them and (2) Primeline sold securities in violation of K.S.A. 17-1254.

## What Statute of Limitations Applies?

The Act does not provide a specific statute of limitations for civil actions brought under K.S.A. 17-1268(a). What statute of limitations applies to such actions is a question of first impression. We hold that the trial court applied the correct statute, K.S.A. 60-512(2):

"The following actions shall be brought within three (3) years: . . . (2) An action upon a liability created by a statute other than a penalty or forfeiture."

Two federal district court cases have concluded, and the parties agree, that 60-512(2) applies to claims under K.S.A. 17-1268(a). See *Mid Kansas Fed. S. & L. v. Orpheum Theater Co.*, 810 F. Supp. 1184, 1193 (D. Kan. 1992); *Comeau v. Rupp*, 810 F. Supp. 1127, 1156 (D. Kan. 1992).

K.S.A. 60-512(2) does not apply to every statutory cause of action. It applies when a statute creates a new, substantive right not recognized at common law, but not when a statute merely affords relief for certain violations of existing common-law rights. *Wright v. Kansas Water Office*, 255 Kan. 990, 997, 881 P.2d 567 (1994).

K.S.A. 17-1268(a) created new, substantive rights and liabilities not existing under common law. Fraud-based actions under 17-1268(a) are not identical to common-law fraud actions. Consequently, 60-512(2) properly applies to 17-1268(a) fraud-based actions. We note, however, that 60-512(2), a general statute of limitations, applies only because there is no specific statute of limitations in the Act.

## When Does a Fraud-Based Action Accrue?

The next question, also one of first impression, concerns when the three-year limitations period in 60-512(2) begins to run on 17-1268(a) fraud-based actions. We need not consider the accrual of the two other types of actions under 17-1268(a). The district court held that the statute of limitations on each of the Kellys'

claims (a separate claim for each investment) began to run upon the sale of each security. Since the last sale to the Kellys was in April of 1989, and this action was not filed until January 8, 1993, their statutory claims were deemed untimely as to all of the investments.

The Kellys contend that at least for their fraud-based actions under 17-1268(a), the limitations clock should not have started ticking until they discovered or reasonably should have discovered the facts establishing their right to relief. They assert such discovery was not until shortly before they filed the instant action, and in any event, they contend the point of their discovery is a question of fact for the jury to decide. Primeline, meanwhile, counters that the district court was correct in holding that there is no discovery rule in 60-512(2) applicable to fraud-based actions under 17-1268(a).

Two district courts have addressed this question, the district court in the case at bar and the federal district court in *Orpheum Theater*. The district court in the instant action rejected the discovery rule; the district court in *Orpheum Theater* applied the discovery rule. 810 F. Supp. at 1193.

Unlike K.S.A. 1993 Supp. 60-513(a)(3), (b), and (c), which state when those causes of action accrue, 60-512(2) simply says that an action upon a liability created by statute shall be brought within three years. Primeline contends that silence in 60-512(2) is clear evidence of legislative intent. After all, Primeline argues, the legislature has shown through 60-513 and other specific statutes of limitation that it knows how to include a discovery rule of accrual. The fact that it has not included such a rule in 60-512(2) must mean that the legislature does not intend for a discovery rule to accompany actions controlled by 60-512(2).

While a plain meaning argument for statutory construction often is persuasive, we question its application in the instant case. Because of the general nature and potential applicability of 60-512(2) to many different kinds of actions, the statute is not a comfortable location for a sweeping "one size fits all" discovery rule. See K.S.A. 1993 Supp. 60-513 for specific types of actions requiring discovery (*i.e.*, fraud, negligence, medical malpractice).

The Kellys argue that legislative history is in their favor. Their argument appropriately centers on the legislature's decision in 1967 to remove, without replacing, the statute of limitations provision then contained in the Act. Rather than viewing the 1967 legislative action in isolation, we view it in the context of the long history of securities regulation in Kansas.

Although the current Act contains no specific statute of limitations provision, Kansas securities laws did contain such a provision from 1929 until 1967. Before 1929, the Kansas Blue Sky Law, L. 1911, ch. 133, did not expressly provide civil remedies for fraudulent securities transactions; consequently, it did not set forth a statute of limitations.

The 1929 "speculative securities act" expressly added civil remedies (rescission, recovery of the purchase price) for sales violating the act, and set forth the following limitations period: *"Provided, That no action shall be brought for the recovery of the purchase price after two years from the date of such contract for sale."* L. 1929, ch. 140, § 18. (Emphasis added.) In 1935, the two-year time limit was increased to three years; the time period still commenced upon the date of sale. L. 1935, ch. 129, § 13.

In 1937, the legislature added another specific limitations provision, not directly applicable to the case at bar, which stated:

*"Provided further,* That where the purchase price is a royalty or a mineral interest in land, and such security is unregistered, or is sold through an unregistered broker or unregistered agent no action shall be brought for the recovery of the purchase price after *fifteen years from the date of such sale or contract for sale* . . . ." L. 1937, ch. 177, § 1. (Emphasis added.)

In 1957, the legislature repealed the existing securities laws and adopted the Act, patterned after the Uniform Securities Act. The Uniform Act had been approved one year earlier by the National Conference of Commissioners on Uniform State Laws. Prefatory Note, 7B U.L.A. 509, 510 (1958). Like many state laws modeled after the Uniform Act, the Kansas Act contained "numerous variations, omissions, and additional matter." General Statutory Notes, 7B U.L.A. 511 (1958). One variation was in the statute of limitations. The Uniform Act's civil remedies provision said that "[n]o person may sue under this section more than two years after

the contract of sale." Uniform Securities Act § 410(e), 7B U.L.A. 643 (1958). The Kansas Legislature, however, elected to retain the *three*-year limitations period then in effect under Kansas law, so it simply inserted "three" in place of "two" in the Uniform Act's statute of limitations section. L. 1957, ch. 145, § 17(c). In addition, the legislature in 1957 carried over into the Act the special 15-year limitations period applicable to sales of securities in exchange for royalty or mineral interests in land. L. 1957, ch. 145, § 17(c). The Uniform Act contained no such provision. The statutes of limitations provisions were codified in G.S. 1949, 17-1268(c) (1957 Supp.).

Ten years later, the legislature amended 17-1268(c) by striking both the 3-year and 15-year statutes of limitations. L. 1967, ch. 122, § 4(c). No other changes were made to 17-1268(c). No statute of limitations provisions were added elsewhere in the Act. In its entirety, the following language was removed from the Act in 1967:

"No person may sue under this section more than three (3) years after the contract of sale: *Provided,* That where the purchase price is a royalty or a mineral interest in land, and such security is unregistered, or is sold through an unregistered broker or unregistered agent, no action shall be brought for the recovery of the purchase price after fifteen (15) years from the date of such sale or contract for sale."

The parties in the case at bar advance conflicting arguments about the legislature's probable intent in excising the limitations provisions from the Act. The Kellys assert that the legislature wanted to abolish the rule of accrual, under which statutory claims accrued upon the sale of a security. Essentially, the Kellys contend that the legislature intended to "make room" for the application of a discovery rule. Primeline argues that "the more plausible interpretation of the legislature's intentions in [1967] is that the legislature was relying upon K.S.A. 60-512(2) (with no discovery rule) to be the applicable statute of limitations." Primeline's argument assumes the legislature did not intend to *change* the law with respect to the statute of limitations for fraud-based actions under 17-1268(a) (not involving royalty or mineral interests in land). According to Primeline, the legislature intended the general provision, 60-512(2), to apply rather than a specific provision.

Independent research of the relevant 1967 legislative committee minutes and reports reveals an interesting but enigmatic clue to the legislature's intent in removing the limitations language. On March 9, 1967, the Senate Judiciary Committee approved S.B. 357, which amended 17-1268(c) by deleting the two specific statutes of limitations provisions. No comments on the specific change can be found in the minutes of that senate meeting. On April 4, 1967, the House Judiciary Committee considered S.B. 357. Mr. Rogers, one of four subcommittee appointees assigned to study the bill, reported on the bill the following day. The minutes of the April 4, 1967, meeting state: "Mr. Rogers then proceeded to S. B. 357, which he stated was a housekeeping bill which came about as a result of law suits. He further stated this bill took out the statute of limitations *which the securities people do not like.*" (Emphasis added.) On April 6, 1967, the House Judiciary Committee unanimously passed the proposal removing both the 3-year and 15-year statutes of limitations from 17-1268(c). There was no further discussion concerning the statutes of limitations. Senate Bill 357, deleting the statutes of limitations, was enacted.

Although we have identified the origin of the statutory interpretation problem in the case at bar, the clue from the house committee report is too brief and too obscure to be conclusive. The only sound conclusion that can be drawn from the legislative history is that the House Judiciary Committee appeared to believe that it was making *some change* in the law in 1967, in response to the "securities people," whoever they were. Primeline's contention that the legislature was simply shifting the locus of the same rule (three years from date of sale) from 17-1268(c) to 60-512(2) is therefore not persuasive.

We find no obvious answer to the question whether a fraud-based cause of action under K.S.A. 17-1268(a) is intended by the legislature to accrue upon the sale of the security or when the plaintiffs discover (or reasonably should have discovered) the facts necessary to support a claim.

Primeline's reasoning that no express language in 60-512(2) or 17-1268 provides for a discovery rule is weakened by these facts:

(1) There is no express language in 17-1268 addressing any aspect of the statute of limitations; and (2) in 1967, the legislature purposefully removed from 17-1268(c) a three-year limitations period running from the time of sale, the exact rule Primeline seeks to apply in the instant case. ·

We conclude from our review of the relevant statutory language and legislative history that a fraud-based cause of action under K.S.A. 17-1268(a) does not accrue until the plaintiffs discover (or reasonably should have discovered) the alleged fraud. Our conclusion is based primarily upon the remedial nature of the Act, which should be liberally construed in favor of the investing public. See *State ex rel. Mays v. Reidenhour*, 248 Kan. 919, 934, 811 P.2d 1220 (1991). A fraud-based action under K.S.A. 17-1268(a), generally speaking, is similar to but *easier* to prove, *i.e.,* more favorable to plaintiffs, than common-law fraud. The legislature has specifically provided a discovery rule for common-law fraud. It has provided no specific guidance with respect to actions under 17-1268(a). Because of the clear remedial nature and intent behind 17-1268(a), we conclude that the legislature intended for a discovery rule to apply to fraud-based actions under that statute.

### Was Summary Judgment Against the Kellys the Right Result Reached for the Wrong Reason?

Primeline argues that even if a discovery rule applies, the Kellys' claims were still untimely as a matter of law under the undisputed facts. The rules governing the review of summary judgment motions, both in the district court and on appeal, are well established. See *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994). We can uphold summary judgment against the Kellys if it was the correct result, even if reached for the wrong reason. *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 (1993). The district court did not reach the question whether the Kellys reasonably should have discovered the alleged fraud because it held that the discovery rule did not apply under K.S.A. 60-512(2).

Primeline must be able to show, under the undisputed facts, that the Kellys, *as a matter of law*, reasonably should have dis-

covered their claim within three years before filing on January 8, 1993. The facts are disputed with respect to what the Kellys told Baxter when they first sought his advice, what he told them about each investment, and when the Kellys learned that Baxter had placed them in higher risk investments than they claim they were led to believe.

Primeline relies on the undisputed fact that the Kellys received prospectuses and other offering and subscription materials near the time of purchase of each investment. For most or all of the investments at issue, the prospectuses and offering documents contained provisions which explicitly warned of the risks of the investment. When purchasing each investment, the Kellys signed forms showing that they had read financial documents concerning the investment. The Kellys admit that they generally did not read the prospectuses, and if they did look at them, they did not go through them carefully and did not fully understand them. That is why they hired Baxter, the Kellys suggest.

According to Primeline, the Kellys had a duty to read the information provided to them with respect to each investment. By certifying that they had read such information, Primeline contends, all of the information (*i.e.*, descriptions, limitations, and warnings) they received should be imputed to them; in doing so, the Kellys must be deemed as a matter of law to have known that Baxter, as they claim, was misrepresenting or omitting material facts about each investment. Since the Kellys had all of the information for each investment in their possession more than three years before filing suit, Primeline asserts the Kellys' claims are time barred even if a discovery rule applies.

In support of their theory imputing information to the Kellys, Primeline cites *Vanier v. Ponsoldt*, 251 Kan. 88, 101, 833 P.2d 949 (1992), and two federal cases, *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798 (1st Cir. 1987), and *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511 (10th Cir. 1983). The three cases are distinguishable from the case at bar. *Vanier* was a contract case involving the Uniform Commercial Code. The federal cases concluded, as a matter of law, that the information in the financial documents available to plaintiffs was so clearly contrary to the alleged mis-

representations or omissions that the plaintiffs could not have justifiably relied on the alleged misinformation. *Kennedy*, 814 F.2d at 805; *Zobrist*, 708 F.2d at 1518. Both cases point out, however, that such a determination is generally a factual question for the jury in light of "all relevant factors," including:

"(1) [t]he sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations." *Kennedy*, 814 F.2d at 804; *Zobrist*, 708 F.2d at 1516.

The circumstances alleged in the Kellys' case distinguish it from *Kennedy* and *Zobrist*. As investors, the Kellys do not have the same level of sophistication as the plaintiffs in *Kennedy* and *Zobrist*. The Kellys' relationship with Baxter was not long-term, but encompassed only the few years in which the Kellys gradually invested the money that Mr. Kelly had received upon retirement. The Kellys' situation is more like that in *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719 (10th Cir. 1984). *Wegerer* distinguished *Zobrist* on the basis that *Zobrist* involved a "sophisticated investor." The Tenth Circuit refused to impose the same duty on the Wegerers, who were not sophisticated investors. 744 F.2d at 723.

When the Kellys discovered or reasonably should have discovered the facts necessary to know they had a claim against Primeline cannot be decided as a matter of law on the undisputed facts. We vacate the summary judgment in favor of Primeline.

## The Kellys' Common-Law Claims

The district court's summary judgment ruling concluded by stating, "Defendants [Primeline] are rendered judgment." The ruling did not specify whether the district court was granting summary judgment only on the Kellys' claims under the Act, or on the Kellys' common-law claims as well. Primeline had moved for summary judgment against all of the Kellys' claims on statute of limitations grounds.

Although the parties and the district court may have viewed the order as a final disposition of the entire case, the district court appears to have only considered the statute of limitations with respect to the Kellys' statutory claims. The district court began its discussion by stating that the "[p]laintiff's causes of action . . . arise under the 'Blue Sky Laws.' " K.S.A. 60-512(2), which, Primeline conceded, does not apply to the Kellys' common-law claims, was the only limitation statute referenced.

We conclude that the district court's summary judgment ruling did not consider whether the Kellys' common-law claims were amenable to summary disposition under their respective statutes of limitations. The status of the Kellys' common-law claims is not an issue for our review.

### PRIMELINE'S CROSS-APPEAL

Primeline, in a cross-appeal, seeks review and clarification of the district court's memorandum decision. Primeline interprets the decision as holding that the "plaintiffs had legal causes of action" under the Act. Primeline seeks a determination that the district court's statement did not establish Primeline's statutory liability as the law of the case. The Kellys did not move for summary judgment on the question of Primeline's liability. Primeline's liability remains open for appropriate resolution upon remand.

The second issue raised by Primeline in the cross-appeal concerns whether the Kellys state a valid claim for relief under K.S.A. 17-1268(a) based on alleged violations of K.S.A. 17-1254(g)(7) and (12). As we have noted, there are three kinds of civil actions described in K.S.A. 17-1268(a): actions based on violations of K.S.A. 17-1254, actions based on violations of K.S.A. 17-1255, and fraud-based actions. The Kellys alleged "violations of K.S.A. 17-1254, relating to engaging in dishonest and unethical conduct and relating to failure to reasonably supervise agents and employees." The question is whether "dishonest and unethical conduct," as described in 17-1254(g)(7), or the "failure to supervise agents and employees," as described in 17-1254(g)(12), provide a basis for a civil action under 17-1268(a).

Primeline moved to dismiss these claims for failure to state a claim. In ruling on the summary judgment motions, the district court stated:

"One further [issue] was presented, K.S.A. 17-1268, which provides for a course of action for 'offer or sale' of a security in violation of 17-1254 or 17-1255 or offers or sells a security by means of any untrue statement of material fact or omission to state as material fact . . .' K.S.A. 17-1254, under paragraph (g), provides for certain authority to the commissioner. The question presented to [sic] the provisions of paragraph (g) provide a direct cause of action to a plaintiff.

"The Court determines that violations of paragraph (g) are actionable if they come within the ambient of 'offers or sells a security by means of any untrue statement of material fact or omission to state a material fact.' "

In filing the cross-appeal, Primeline construes the district court's ruling as holding that K.S.A. 17-1254(g)(7) and (12) provide independent bases for liability under 17-1268(a). (It is questionable whether the district court held that subsection [g] provides an independent basis for liability.) The district court stated that violations of subsection (g) must come "within the ambient" of fraud-based actions under 17-1268(a). The interpretation of the statute is a question of law, and we review the question de novo. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

K.S.A. 17-1268(a) does not expressly limit its scope to any particular subsection of 17-1254. Thus, the Kellys contend, any violation of any subsection of 17-1254 must be actionable under 17-1268(a).

Turning to 17-1254, subsection (a) expressly declares it "unlawful" to engage in business in Kansas as a broker-dealer, agent, or investment adviser unless properly registered under the Act; violations of subsection (a) are clearly actionable under 17-1268(a). Similarly, 17-1255 expressly declares it "unlawful" to offer or sell any nonexempt security unless the security is properly registered. Violations of 17-1255 are actionable under 17-1268(a).

K.S.A. 17-1254(g), to the contrary, does not declare anything "unlawful," as does 17-1254(a) and 17-1255. K.S.A. 17-1254(g) describes what the Securities Commissioner may consider in determining whether to deny, suspend, or revoke the registration of any broker-dealer, agent, or investment adviser. K.S.A. 17-1254(g) provides in part:

"(g) The commissioner may by order deny, suspend or revoke the registration of any broker-dealer, agent or investment adviser if the commissioner finds that such an order is in the public interest and that the applicant or registrant . . . :

. . . .

(7) has engaged in dishonest or unethical practices in the securities business; [or]

. . . .

(12) has failed reasonably to supervise the person's agents if the person is a broker-dealer or the person's employees if the person is an investment adviser."

Notably, a willful violation or failure to comply with *any* provision of the Act, or "any rule or regulation or order under this act or a predecessor act" is another condition upon which the Securities Commissioner may base a decision to deny, suspend, or revoke a seller's registration. K.S.A. 17-1254(g)(2).

In construing a statute, the several provisions of an act must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire statute if it is reasonably possible to do so. *Guardian Title Co. v. Bell*, 248 Kan. 146, 151, 805 P.2d 33 (1991). Construing the reference in 17-1268(a) to "violations" of 17-1254 and 17-1255, the logical conclusion is that the legislature intended violations of 17-1254 to be limited to the prohibitions expressed in 17-1254(a). Otherwise, any violation of any provision in the entire Act would be actionable through K.S.A. 17-1254(g)(2). If the legislature wanted a remedial statute so broad, it would not have limited 17-1268(a) in the manner it did. The enumerated factors in 17-1254(g) apply only to the Securities Commissioner's considerations with respect to registrations.

Violations of K.S.A. 17-1254(g) do not produce a private civil remedy actionable under K.S.A. 17-1268(a). Consequently, we need not address when the statute of limitations on such actions would accrue and whether such limitation period had expired at the time the Kellys sued.

Reversed and remanded for further proceedings.

ABBOTT, J., not participating.

DAVID PRAGER, C. J. Retired, assigned.