**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 1 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TIFFANY LYN BENEDETTO,

     Plaintiff - Appellant,

v.

PAINEWEBBER GROUP, INC.;
PAINEWEBBER, INC.; FOURTH
QUALIFIED PROPERTIES, INC.;
PAINEWEBBER PROPERTIES, INC.;
SECOND QUALIFIED PROPERTIES,
INC.; SIXTH INCOME PROPERTIES
FUND, INC.; THIRD QUALIFIED
PROPERTIES, INC.,

     Defendants - Appellees.

No. 96-3401
(D.C. No. 95-CV-2505)
(District of Kansas)

**ORDER AND JUDGMENT** [*]

Before **PORFILIO** , **McKAY** and **LUCERO** , Circuit Judges.

Tiffany Lyn Benedetto sued PaineWebber alleging violations of state tort

and contract law. She also brought claims under state and federal securities law.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The district court dismissed all her claims at summary judgment as barred by the statute of limitations. We affirm in part, and reverse and remand in part.

## I

As the parties to this matter are familiar with the facts of this case, we recite only those portions of the record most directly relevant to the present Order and Judgment. When she was four, Tiffany Lyn Benedetto received $28,000 in a settlement arising out of a wrongful death action. The money was entrusted by Benedetto's mother and guardian, Deborah Varley, to a branch office of PaineWebber. Jeffry Heal, the manager of that office, assured Varley that the money would be kept in "safe investments," an assurance that he allegedly repeated over the next several years.

Benedetto alleges, however, that Heal placed the funds in "unsuitable high-risk investments." I Appellant's App. at 3. Over a six-year period from 1983 to 1989, Heal invested the bulk of the funds in five PaineWebber real estate limited partnerships: PaineWebber Qualified Plan II ("PWQP II"), PaineWebber Qualified Plan III ("PWQP III"), PaineWebber Qualified Plan IV ("PWQP IV"), PaineWebber Mortgage Partners V ("PWMP V"), and PaineWebber Income Properties VI ("PWIP VI"). Appellant charges that PaineWebber's representations as to these partnerships were "false, misleading, and omissive," id. at 9, in failing to disclose the high risks associated with these investments, and

that, because of high fees and commissions, PaineWebber's promotion and maintenance of these investments constituted self-dealing, id. at 14. Moreover, she asserts that PaineWebber's misrepresentations as to these investments were on-going. For instance, she claims that in October 1994 PaineWebber reported the value of her partnership investments at more than double the prevailing secondary market price. See IV Appellant's App. at 641. Benedetto states that such manipulations prevented her from discovering "by the exercise of reasonable diligence" PaineWebber's misconduct and her resulting injuries. Id. at 654.

Varley's guardianship ended in July 1992 when Benedetto turned eighteen. In November 1994, a securities class action was filed against PaineWebber in the Southern District of New York. The action alleged that PaineWebber was liable to investors for its mismanagement of various investments, including the partnerships at issue here. Benedetto learned of this action in July 1995. In November of that year, she filed an individual action against PaineWebber. That action alleged that PaineWebber breached a contract with the National Association of Securities Dealers, of which Benedetto was allegedly a beneficiary, and violated Kansas securities law. It also charged PaineWebber with breach of fiduciary duty, negligence, and fraud. The parties dispute whether Benedetto's initial filings also pleaded a cause of action under federal securities law.

## II

The district court granted PaineWebber's motion for partial summary judgment in an order dated October 16, 1996. The court accepted PaineWebber's argument that as to PWMP V and PWIP VI, the applicable statutes of limitation barred all causes of action. The district court premised this decision on a determination that appellant had inquiry notice: first, of defendant's PWMP V misconduct from January 1991, when PaineWebber informed her that the value of that investment had dropped significantly in the course of one month; and, second, of defendant's PWIP VI misconduct from February 1991, when PaineWebber notified her of a suspension in investment distributions from that investment following a significant increase in the partnership's net loss.

The district court then ordered Benedetto to submit an amended complaint "that should be consistent with the rulings" contained in the order granting partial summary judgment. Id. at 587. Following submission of an amended complaint, the district court indicated that its summary judgment on the PWMP V and PWIP VI claims would apply to bar all the remaining claims. Appellee's Supp. App. at 50. Endeavoring not to concede the validity of the court's partial summary judgment, Benedetto's counsel then stipulated that the analysis underlying that judgment would—if correct—also dispose of the claims stated in the amended complaint. See id. at 50-54. The district court then granted leave for Benedetto

-4-

to file the amended complaint, and ruled summarily that all of Benedetto's additional claims were barred for the reasons stated in the earlier grant of partial summary judgment. See id. at 60-61. That order reiterated Benedetto's stipulation that the partial summary judgment analysis also disposed of her remaining claims, albeit—in her view—incorrectly. See id. Benedetto appeals.

## III

We determine, first, exactly what potential grounds of error are properly before us. Benedetto's amended complaint has little bearing on the present appeal because "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Black v. Baker Oil Tools, Inc., 107 F.3d 1457, 1460 (10th Cir. 1997) (party may not rely on pleadings to demonstrate issue of material fact). In effect, the only grounds that Benedetto raises in opposition to summary judgment on her PWQP II-IV claims are those that she earlier asserted when defending her PWMP V and PWIP VI claims against partial summary judgment.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). PaineWebber met this burden with respect to Benedetto's PWMP V and PWIP VI claims by filing its motion for partial summary judgment. PaineWebber also effectively met this burden with respect to Benedetto's PWQP II-IV claims when, following its grant of partial summary judgment, the district court requested appellant to consider stipulating that "the analysis which I have already made in the order dated October 16th applies equally to the other transactions . . . ." Appellee's Supp. App. at 51. At this point, PaineWebber had apprised the court of its view that no issues of material fact existed as to Benedetto's remaining claims.

Once PaineWebber had met this burden, it is beyond dispute that appellant was on notice that it needed to come forward with its opposition to summary judgment as to those claims not disposed of by the partial grant of summary judgment. In effect, however, by accepting the stipulation offered by the district court, and thus by failing to file any additional arguments supporting the existence of issues of material fact, Benedetto offered only her initial opposition to summary judgment as grounds for precluding a similar disposition of her residual claims. <u>See</u> <u>id.</u> at 51-54. Appellant explicitly agreed there was no need

to brief summary judgment on these remaining claims, nor to make an "independent analysis" of them, for purposes of appeal. Benedetto apparently determined that the grounds of her opposition to partial summary judgment would suffice to preserve her remaining claims against summary judgment. See id. As a consequence, the stipulation delimits the grounds of Benedetto's opposition.

Thus the only asserted grounds of error properly before us are that the district court erred in concluding that Benedetto's arguments in opposition to partial summary judgment—when generalized to cover her claims based on all five investment funds—presented no genuine issue of material fact on the claims presented in the amended complaint. Although the amended complaint was properly filed before the district court, because Benedetto filed it after stipulating that no new briefing or analysis was required for claims raised in the amended complaint, such claims are defended against summary judgment on the limited grounds set forth in Benedetto's opposition to summary judgment. For instance, Benedetto argues in her amended complaint and before this panel that Ohio tolling and limitations principles should apply to certain of her state causes of action. See, e.g., IV Appellant's App. at 660; Appellant's Br. at 24-26. But her opposition to partial summary judgment did not invoke any such arguments; instead, it stated explicitly and repeatedly that Kansas law should govern such claims. See, e.g., II Appellant's App. at 159, 162. We therefore do not consider

such arguments on appeal. [1] The analysis that follows is therefore limited to assessing the merits of Benedetto's arguments made in opposition to partial summary judgment, and generalized by her stipulation to apply to all her claims.

## IV

We confine our review to two contentions Benedetto raises on appeal: first, that the district court erred in its inquiry notice determination; second, that the district court erred in rejecting her cause of action under federal securities law. [2]

## A

Appellant's inquiry notice argument is meritorious. The statute of limitations on Kansas securities law and common law tort actions runs for three and two years, respectively, from the time at which wrongful conduct becomes reasonably ascertainable. See Kan. Stat. Ann. § 60-513(b) (1994); Kelly v. Primeline Advisory, Inc., 889 P.2d 130, 134, 137 (Kan. 1995); Knight v. Myers,

---

[1] Fairly construed, the stipulation does not limit Benedetto to the precise language contained in that earlier brief, but rather to the format of its arguments. Nonetheless, her argument that Kansas law controls the applicable statute of limitations and tolling analyses is not broad enough to encompass a later claim that Ohio law governs instead.

[2] It is true that appellant did not reference her federal claims in opposition to partial summary judgment. Under the circumstances, however, that was not her burden because PaineWebber's motion for partial summary judgment did not challenge these claims as inadequate—quite possibly because PaineWebber did not read the original complaint to state such claims. But given that the district court appears to have ruled against the merits of any such claims, and the amended complaint does state federal claims, we think they are properly raised here.

-8-

748 P.2d 896, 901 (Kan. 1988). The district court appears to have held, first, that PaineWebber's sole misconduct was the initial sale of these various investments to Benedetto, and second, that the injuries caused by these acts of misconduct were—as a matter of law—reasonably ascertainable as of 1990-91, following the company's disclosures about PWMP V and PWIP VI. By extension, the district court held that Benedetto had inquiry notice from this time with respect to her remaining investments as well.

This analysis errs in two respects. First, we cannot agree with the district court's implicit assumption that the initial sale of the investments represents the only "fact of injury" for purposes of determining the application of the statute of limitations. Accepting, arguendo, the district court's characterization that "[p]laintiff's tort claims all hinge upon Heal's representation that plaintiff's investments were 'safe,'" IV Appellant's App. at 580, there is enough evidence in the record to indicate that these representations of safety continued past 1989 and were relied on to her detriment by the plaintiff and her guardian. See Varley Aff., II Appellant's App. at 166 ("Mr. Heal always assured me that Tiffany's money was being kept in safe investments with minimal risk. I relied on these statements made by Mr. Heal."). Moreover, it is far from clear that all Benedetto's tort and securities law claims hinge on representations of safety, other than as a proximate cause of her continued investment in PaineWebber's real estate partnerships. The

pleadings and materials opposing summary judgment are replete with charges of PaineWebber breaching fiduciary duties, committing negligence, and otherwise acting wrongfully, the merits of which do not depend in any way on representations to Varley or Benedetto that the investments in question were safe, beyond the fact that such representations left appellant open to injury by these separate acts of wrongdoing. Even if the events of 1990 and 1991 were sufficient to create inquiry notice of some of this additional misconduct, appellant has alleged that such misconduct continued beyond this time. We therefore cannot agree with the district court that statutes of limitations bar all such claims. Inasmuch, therefore, as PaineWebber has failed to meet its initial Rule 56 burden of showing a lack of genuine issues of material fact with respect to these claims, summary judgment cannot lie.

Second, Kansas authority indicates that whether Benedetto or her mother could have continued to rely on PaineWebber's representations of safety following the PWMP V and PWIP VI disclosures in 1990 and 1991 is properly a question for the jury. Benedetto and her mother introduced evidence that they were unsophisticated investors, see II Appellant's App. at 172, 174, which, contrary to the district court's view, is a factor that the Kansas courts have taken into account in determining whether securities misconduct was reasonably ascertainable. See, e.g. , Kelly , 889 P.2d at 138 (where party is "unsophisticated

investor," date of accrual is matter for factfinder even where investment materials received explicitly warned of risks of investment).

Against that background, the record in this case is not sufficiently conclusive for the court to have resolved as a matter of law that PaineWebber's wrongdoing was necessarily ascertainable in 1990 or 1991 by a reasonable party in Varley's position. Cf. Wolf v. Preferred Risk Life Ins. Co., 728 F.2d 1304, 1307 (10th Cir. 1984) ("Questions of when a reasonable person would discover an injury and what a reasonable person would have done are generally within the province of the jury."). An unsophisticated investor, told repeatedly by an investment manager—acting pursuant to a probate court's instructions—that her investments are "safe," should not necessarily ascertain injury under the circumstances identified as dispositive by the district court.

Although payments from PWIP VI were suspended in November 1990, PaineWebber's quarterly report for the final fiscal quarter of that year was equivocal about the partnership's prospects: three of the five properties were reported to be performing well; one was reported as performing badly because of market conditions; and, although a borrower had defaulted on payments on a final property, a loan on the latter was reported to be adequately secured by the value of the building. With respect to PWMP V, despite the decline in the value of Benedetto's investment, there is no indication that distributions to the partnership

ceased.  Moreover, the very report showing this decline in value also shows that Heal's investment strategy since May 1979 had grown Benedetto's investment portfolio from $28,000 to $67,847.46 by December 1990, an appreciation of more than 142% over less than twelve years, or more than 8% per annum.    See I Appellant's App. at 94;   compare  Waite v. Adler , 716 P.2d 524, 527-28 (Kan. 1986) (party on constructive notice of misrepresentation of creditworthiness following reduction in bank's floor plan from $235,000 to $75,000);    Friends Univ. v. W.R. Grace & Co.  , 608 P.2d 936, 941-42 (Kan. 1980) (party on notice of negligence when new roof on new building leaks).  For a reasonable person of Varley's sophistication, one month's poor showing would not    necessarily  be enough to create inquiry notice of wrongdoing against a background of more than a decade's proven investment results by the same investment manager.  "[W]here the evidence is in dispute as to when substantial injury . . . becomes reasonably ascertainable, the issue is for determination by the trier of fact."    Hecht v. First National Bank & Trust Co.  , 490 P.2d 649, 656 (Kan. 1971).

**B**

Benedetto's claim under federal securities law is without merit.  Arguably, it was never properly pled below; the amended complaint avers a violation of the "applicable . . . federal securities laws," IV Appellant's App. at 658, but makes no attempt to delineate which such laws might be applicable.    See Phillips v.

Calhoun , 956 F.2d 949, 953-54 (10th Cir. 1992) (holding that party must support its argument with legal authority). However, citing the Supreme Court's decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson , 501 U.S. 350, 364 (1991), Benedetto's appellate brief concedes that "claims under the federal securities laws must be brought within one year of discovery, and in any event, not more than three years after the alleged violation occurred." Appellant's Br. at 28. As Lampf only addresses alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)") and of 17 C.F.R. § 240.10b-5 (1995) ("Rule 10b-5"), we will construe Benedetto's pleading under the "federal securities laws"—inasmuch as it raises claims at all—to lie under these same provisions.

To be actionable under Section 10(b) and Rule 10b-5, the fraud alleged must be "integral to the purchase" of the investment in question. See Flickinger v. Harold C. Brown & Co. , 947 F.2d 595, 598 (2d Cir. 1991). Here, the final purchase of the disputed investments was made in 1989. Therefore the district court was correct to dismiss the claims as untimely; this action was brought well in excess of three years after the last possible date of violation. See Lampf, 501 U.S. at 364.

**V**

The district court's grant of summary judgment as to appellant's federal securities law and state contract law claims is **AFFIRMED** . The district court's grant of summary judgment on appellant's tort and state securities law claims is **REVERSED** .

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge