No. 87,590

IN THE MATTER OF J.M., D.O.B. 10-85.

(44 P.3d 429)

Opinion filed April 19, 2002.

*Michael George,* general counsel, Kansas Juvenile Justice Authority, argued the cause and was on the brief for appellant.

*Harold F. Schorn, II,* special prosecutor, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BRAZIL, J.: The Kansas Juvenile Justice Authority (JJA) appeals the district court's decision adjudicating J.M. as a chronic offender II pursuant to K.S.A. 38-16,129 and committing him to a juvenile correctional facility.

J.M. pled no contest to one count of burglary and one count of felony theft on December 28, 2000. The district court adjudicated J.M a juvenile offender and sentenced him to 1 year of probation. On April 24, 2001, the State filed a motion to modify J.M.'s sentence, alleging he ran away from his assigned home a number of

times. During one of these occasions, J.M. stole a vehicle. The State recommended that J.M. be committed to a juvenile correctional facility. The court in its May 4, 2001, journal entry determined J.M. was a "chronic II escalating felon" and sentenced him to 12 months in a juvenile correctional facility. In doing so, the court considered J.M.'s prior juvenile record consisting of one case: On December 21, 1998, J.M. pled no contest to one count of criminal trespass and one count of criminal damage to property. The court considered these to be "two prior misdemeanor adjudications" under K.S.A. 38-16,129(a)(3)(B)(i).

The record contains a copy of the JJA placement screening form, which was faxed to the district court. The "NOT ACCEPTED" box on the form was checked. The court noted it received the placement screening form from the JJA and recognized that the JJA disagreed with the chronic offender II, escalating felon determination. However, the court maintained its position and ordered the JJA to comply with its original order committing J.M. to the correctional facility.

The court denied the JJA's motion to reconsider and the JJA has appealed.

The JJA argues the district court erred in determining J.M. met the definition of chronic offender II under K.S.A. 38-16,129(a)(3)(B)(i):

"(B) The chronic offender II, escalating felon is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute:

(i) One present felony adjudication and two prior misdemeanor adjudications;

. . . .

"Offenders in this category may be committed to a juvenile correctional facility for a minimum term of six months and up to a maximum term of 18 months. The aftercare term for this offender is set at a minimum term of six months and up to a maximum term of 12 months."

The JJA argues the 1998 case should not be considered to be two separate adjudications. If the 1998 case is one adjudication, then J.M. fails to meet the definition of chronic offender II under K.S.A. 38-16,129(a)(3)(B)(i), as that subsection requires two prior misdemeanor adjudications.

The JJA first argues that comparison to the adult sentencing guidelines is not appropriate because the adult criminal system differs from the juvenile criminal system. Second, the JJA focuses on legislative intent, arguing the amendments to the Juvenile Justice Code were intended to decrease the number of juveniles sentenced to commitment. Last, the JJA argues *State v. Magness,* 240 Kan. 719, 732 P.2d 747 (1987), supports its position. We reject those arguments.

Both parties discuss in their briefs on appeal whether comparison of the juvenile system with the adult system is appropriate. Such comparison weighs heavily in favor of counting both counts in the prior adjudication separately. K.S.A. 21-4710(a) requires multiple counts in a single complaint to be counted separately. K.S.A. 2000 Supp. 21-4711(f) makes the rules applicable to juvenile cases for purposes of adult sentencing: "Except as provided in subsections (4), (5) and (6) of K.S.A. 21-4710 and amendments thereto, juvenile adjudications will be applied in the same manner as adult convictions. Out-of-state juvenile adjudications will be treated as juvenile adjudications in Kansas."

The Court of Appeals in *In re S.A.J.,* 29 Kan. App. 2d 789, 31 P.3d 320 (2001), rejected a comparison to the criminal system:

> "A juvenile does not have a constitutional right to a speedy trial in matters conducted under the Kansas Juvenile Offenders Code. See *In re T.K.,* 11 Kan. App. 2d 632, 634-36, 731 P.2d 887 (1987). Consequently, the 90-day and 180-day rules enumerated in K.S.A. 22-3402 are not applicable. Absent the speedy trial requirements of K.S.A. 22-3402, and with no other statutory time requirements specified in the juvenile code, the issue to be determined is solely whether appellant's case was heard without unnecessary delay. See K.S.A. 38-1651."

However, the defendant juvenile in *S.A.J.* asked the court to read into the juvenile code the statutory speedy trial rules found at K.S.A. 22-3402. In contrast, the comparison with the adult system in the present case is merely intended to interpret language otherwise found in the juvenile code.

The interpretation of a statute is a question of law, and this court's review is unlimited. *Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas,* 268 Kan. 121, 124, 992 P.2d 800 (1999). The rules of statutory interpretation are well known:

"The fundamental rule of statutory construction is that the intent of the legislature governs when that intent can be ascertained from the statute. [Citation omitted.] The general rule is that criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. [Citations omitted.] In construing statutes and determining legislative intent, several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. [Citation omitted.]" *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998).

While a strict construction of K.S.A. 38-16,129(a)(3)(B)(i) would require the prior adjudications to be from separate cases, such construction must be subordinate to the intent of the legislature, as the quotation above suggests. A survey of Chapter 38, Article 16 of the Kansas Statutes Annotated shows an intent on the part of the legislature to give meaning to a prior adjudication involving multiple counts.

K.S.A. 38-1622(a) governs the form of pleadings for cases against juveniles:

"(a) Complaint. (1) Any person 18 or more years of age having knowledge of a juvenile who appears to be a juvenile offender may file with the court having jurisdiction a verified complaint, in writing, which shall state, if known:

. . . .

(E) *for each count*, the official or customary citation of the statute, ordinance or resolution which is alleged to have been violated, but error in the citation or its omission shall not be grounds for dismissal of the complaint or for reversal of a trial if the error or omission did not prejudice the respondent." (Emphasis added.)

The emphasized language in the above quotation shows that multiple counts in a juvenile case are contemplated. K.S.A. 38-1625(a) authorizes a district court to issue a summons which informs the juvenile when he or she should appear in court to "answer the *offenses* charged in the complaint." (Emphasis added.) It is clear from K.S.A. 38-1625(a) that the legislature contemplated multiple counts in one juvenile case. By providing authority for the State to bring actions involving multiple counts in a single juvenile case, the legislature presumably meant to give meaning to those multiple counts. There is a presumption that the legislature does not intend

to enact useless or meaningless legislation. *Hartford,* 268 Kan. at 132. On the other hand, the statute would have meaning in the context of counting a juvenile adjudication later under the adult criminal system because there the multiple juvenile adjudications are counted separately. See K.S.A. 2000 Supp. 21-4711(f).

K.S.A. 38-1634 governs the effects of a plea of nolo contendere. The language used in that section is instructive:

"A plea of *nolo contendere* is a formal declaration that the respondent does not contest the charge. When a plea of *nolo contendere* is accepted the court shall adjudge the respondent to be a juvenile offender. The plea cannot be used against the respondent as an admission in any other action based on the same act."

Clearly, the above section uses language of singularity, *i.e.,* "charge" is singular.

In the event the case is contested, the section governing adjudication is found in K.S.A. 38-1655:

"If the court finds that the respondent committed the offense charged or an included offense as defined in subsection (2) of K.S.A. 21-3107 and amendments thereto, the court shall adjudicate the respondent to be a juvenile offender and may issue a sentence as authorized by this code."

The language is again singular, *i.e.,* "offense." As the above quotations show, there is authority to charge multiple counts; it follows, then, that K.S.A. 38-1655 should be interpreted as providing authority for the district court to adjudicate each of the counts charged and that each one would constitute an adjudication. Viewed this way, a single case might involve multiple adjudications.

The JJA's reliance on the *Magness* opinion is flawed. The *Magness* court interpreted an early version of K.S.A. 38-1602 which excluded from the definition of juveniles those who committed a felony "after having been adjudicated in *two separate prior juvenile proceedings* as having committed an act which would constitute a felony if committed by an adult." (Emphasis added.) 240 Kan. at 720; see K.S.A. 38-1602 (Ensley). The State had charged Magness in two separate juvenile cases. Magness was adjudicated to be a juvenile offender in the separate cases but during the same hearing. Later, the State brought an adult criminal action with the belief that the version of 38-1602 in effect excluded the possibility of a

juvenile prosecution. The district court disagreed, dismissing the case because Magness had only one prior juvenile "proceeding." 240 Kan. at 720.

On appeal, this court considered the State's argument that "combining the two cases for adjudication at one hearing was immaterial." 240 Kan. at 720. The *Magness* court rejected the State's argument and dismissed the State's appeal. 240 Kan. at 723. In its analysis, the court cited general principles of statutory construction, focusing on the legislative purpose and intent. 240 Kan. at 721. The *Magness* court considered materials from the Judicial Council, which had drafted the preliminary version of the legislation. These materials indicated that the rationale behind the requirement of "two separate prior juvenile proceedings" was an effort to give the juvenile system two attempts to rehabilitate the juvenile. 240 Kan. at 722.

The *Magness* case might actually be used against the JJA in the present case. The *Magness* court construed the statutory phrase "two separate prior juvenile proceedings," while the statutory language in the present case is "two prior misdemeanor adjudications," K.S.A. 38-16,129(a)(3)(B)(i). The language is obviously different. It is presumed the legislature knew of the ramifications of the *Magness* decision when it enacted K.S.A. 38-16,129. See *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 524, 957 P.2d 473 (1998) ("The legislature is presumed to know the law."). Had the legislature wanted to make clear "separate" cases were required, it proved it was able to do this with the language used in the prior version of K.S.A. 38-1602, which was at issue in *Magness*. K.S.A. 38-16,129(a)(3)(B)(i) would read as follows: "one present felony adjudication and two separate prior juvenile proceedings resulting in misdemeanor adjudications." Clearly, the legislature did not insert the word "separate"; to do so would have been simple and logical had this been the intent.

K.S.A. 38-1636(a)(2), which governs when the State may bring an adult charge against a minor, also specifically uses the word separate:

"(2) At any time after commencement of proceedings under this code against a respondent who was . . . charged with a felony or with more than one offense

of which one or more constitutes a felony after having been adjudicated or convicted in a *separate prior juvenile proceeding* as having committed an offense which would constitute a felony if committed by an adult and the adjudications or convictions occurred prior to the date of the commission of the new act charged and prior to the beginning of an evidentiary hearing at which the court may enter a sentence as provided in K.S.A. 38-1655, and amendments thereto, the county or district attorney may file a motion requesting that the court authorize prosecution of the respondent as an adult under the applicable criminal statute."

The defendant in *State v. Fultz,* 24 Kan. App. 2d 242, 943 P.2d 938, *rev. denied* 263 Kan. 888 (1997), picked up on the idea that the purpose of the legislation is to give the juvenile a second chance. Fultz appealed his conviction as an adult. While Fultz was 17 years old at the time of the crime, the State eventually charged him as an adult under 38-1602, which required that the juvenile have had two separate prior juvenile adjudications to try him or her as an adult. While both of Fultz' prior adjudications were final, there had not been a dispositional hearing in one of the cases. Fultz argued, relying in part on *Magness,* that the district court did not have jurisdiction to try his case because there had not been a disposition in one of the cases.

The *Fultz* court rejected the argument the legislature intended to always give a juvenile a second chance, finding that while Fultz had not had a dispositional hearing, he had been adjudicated, which was sufficient under the statute. 24 Kan. App. 2d at 247.

Given the provisions in Chapter 38 of the Kansas Statutes Annotated, which contemplate multiple counts in a single juvenile case, it is logical to give meaning to such multiple adjudications for purposes of K.S.A. 38-16,129. Further, the legislature's failure to expressly require separate proceedings, when it had done so in the past, compels the finding that separate proceedings were not intended in K.S.A. 38-16,129. The district court is affirmed.

Affirmed.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.