277 Kan. 881 (2004)
89 P.3d 639
IN THE MATTER OF D.M., A juvenile under the age of 18 years, to-wit: DOB: 05/22/86.
Nos. 90,933, 90,934.
Supreme Court of Kansas.
Opinion filed May 14, 2004.
Bethany C. Daniels, assistant district attorney, argued the cause, and Christine E. Kenney, and Phill Kline, attorney general, were with her on the brief for appellant.
Juanita M. Carlson, Carlson Law Office, P.A., of Lawrence, argued the cause and was on the brief for appellee.
*882 The opinion of the court was delivered by
DAVIS, J.:
This is an appeal in a juvenile proceeding on a question reserved by the State regarding the placement of the juvenile in a juvenile correctional facility. The question reserved asks whether a juvenile, who has a prior adjudication as a felon and three prior misdemeanor adjudications with a present misdemeanor adjudication, may, upon revocation of probation involving both prior and present adjudications, be placed in a juvenile correctional facility as a chronic offender II, escalating felon, pursuant to K.S.A. 38-16,129(a)(3)(B)(i) involving one present felony adjudication and two prior misdemeanor adjudications. We answer the question reserved no and affirm.
The facts are not in dispute and involve the following juvenile proceedings:
(1) January 5, 2001, case number 00JV332 in Douglas County District Court: D.M. was adjudicated for aggravated assault in violation of K.S.A. 21-3410(a), which would have been a severity level 7 person felony if he had been an adult, and at the same time was adjudicated for three counts of cruelty to animals in violation of K.S.A. 2003 Supp. 21-4310(a)(1), which would have been class B nonperson misdemeanors if he were an adult.
(2) February 12, 2001, based on the above adjudications: D.M. was sentenced and placed on order of assignment with Douglas County Youth Services to successfully complete the program.
(3) December 18, 2001, case number 01JV265, in Douglas County District Court: D.M. was adjudicated for theft in violation of K.S.A. 21-3701(a), which would have been a class A nonperson misdemeanor if he were an adult.
(4) February 1, 2002: Based on the above adjudication, D.M. was sentenced and placed on order of assignment with Douglas County Youth Services to successfully complete the program.
(5) December 2, 2002: The State filed a motion for violations of assignment and detention in both 00JV332 and 01JV265.
(6) December 3, 2002: The hearing on the State's motion was held. D.M. was found to be in violation of his order of assignment in both cases.
*883 (7) December 17, 2002: Sentencing was held for both cases. Contrary to the State's request for a direct commitment to a juvenile correctional facility, pursuant to K.S.A. 38-1663(a)(4), D.M. was placed in the legal custody of the commissioner of the Juvenile Justice Authority (JJA) with a recommendation for out-of-home placement.
(8) January 8, 2003: The State filed a motion to reconsider, which was denied on January 9, 2003.
(9) January 7, 2003: The State appealed to the district court of Douglas County. The appeal was heard on May 13, 2003, and the district court upheld the ruling of the pro tem judge.
(10) August 1, 2003: The State appealed the decision in both cases to the Kansas Court of Appeals, and the cases were consolidated on September 4, 2003. This case was transferred to the Kansas Supreme Court on January 15, 2004.
The Question Reserved: Whether a juvenile who has a prior adjudication as a felon and three prior misdemeanors adjudications with a present misdemeanor adjudication may upon revocation of probation involving both prior and present adjudications be placed in a juvenile correctional facility as a chronic offender II pursuant to K.S.A. 38-16,129(a)(3)(B).
The State argues that the district court erred in finding that D.M. was not eligible for placement in a juvenile correctional facility pursuant to K.S.A. 38-16,129(a)(3)(B).
The interpretation of a statute is a question of law subject to unlimited review. In re J.M., 273 Kan. 550, 552, 44 P.3d 429 (2002).
"The fundamental rule of statutory construction is that the intent of the legislature governs when that intent can be ascertained from the statute. The general rule is that criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. In construing statutes and determining legislative intent, several provisions of an act, in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony if possible." 273 Kan. 550, Syl. ¶ 2.

*884 "The KJJC incorporates a detailed placement matrix based on the unique history of a juvenile's past offenses and his or her present offense, providing guidance and alternatives to the sentencing judge for confinement as set forth in K.S.A. 38-16,129. Offenders are classified according to the seriousness of their particular crimes." (Emphasis added.) In re W.H., 274 Kan. 813, 819-20, 57 P.3d 1 (2002).
K.S.A. 38-1663 provides in relevant part: "When a respondent has been adjudicated to be a juvenile offender, the judge may select from the following alternatives: .... (8) Commit the juvenile offender to a juvenile correctional facility as provided by the placement matrix established in K.S.A. 38-16,129, and amendments thereto." (Emphasis added.) K.S.A. 38-1666 provides that if a court finds that a juvenile offender has violated a condition of probation or placement, "the court may extend or modify the terms of probation or placement or enter another sentence."
Relevant to this case, K.S.A. 38-16,129 provides:
"On and after July 1, 1999: (a) For the purpose of committing juvenile offenders to a juvenile correctional facility, the following placements shall be applied by the judge in felony or misdemeanor cases for offenses committed on or after July 1, 1999. If used, the court shall establish a specific term of commitment as specified in this subsection, unless the judge conducts a departure hearing and finds substantial and compelling reasons to impose a departure sentence as provided in K.S.A. 38-16,132 and amendments thereto.
....
"(3)(B) The chronic offender II, escalating felon is defined as an offender adjudicated as a juvenile offender for an offense which, if committed by an adult, would constitute:
(i) One present felony adjudication and two prior misdemeanor adjudications.
....
"Offenders in this category may be committed to a juvenile correctional facility for a minimum term of six months and up to a maximum term of 18 months. The aftercare term for this offender is set at a minimum term of six months and up to a maximum term of 12 months."
The State relies primarily upon In re J.M. in arguing that D.M. met the requirements to be sentenced to a juvenile correctional facility under this statute. In that case, the juvenile offender pled no contest to one count each of burglary and felony theft and was sentenced to probation. A few months later, the State filed a motion to modify his sentence because he had run away from the assigned home a number of times and had stolen a vehicle. In *885 sentencing the juvenile offender to a juvenile correctional facility, the district court determined that he was a chronic offender II, escalating felon under K.S.A. 38-16,129(a)(3)(B)(i) (one present felony and two prior misdemeanor adjudications) based on a record which included one prior juvenile case in which the juvenile offender had pled no contest to two misdemeanors.
On appeal, the JJA argued that the district court erred in finding that the prior case should be considered as two separate misdemeanor adjudications. This court rejected that argument, reasoning that because Chapter 38 of the Kansas Statutes Annotated contemplates multiple counts in a single juvenile case, it is logical to give meaning to such multiple adjudications for purposes of K.S.A. 38-16,129. Moreover, the legislature's failure to expressly require separate proceedings, when it had done so in the past, compelled the finding that separate proceedings were not intended under the statute. 273 Kan. at 553-56.
Relying on this holding, the State argues that because separate proceedings were not intended under K.S.A. 38-16,129, "the practical result is that the words `present' and `prior' have no effect on a juvenile's eligibility for a [juvenile correctional facility], as long as the juvenile has the required number of adjudications." Following this reasoning, the State argues that D.M.'s one felony and three misdemeanor adjudications in 00JV332 alone would have classified him as eligible for a juvenile correctional facility as a chronic offender II, escalating felon. The State further argues that because he was being sentenced for probation violations in both this case and a separate, subsequent case involving a misdemeanor, he was eligible for placement in a juvenile correctional facility under In re J.M.
D.M. correctly distinguishes this case from In re J.M. by pointing out that J.M.'s second (present) set of adjudications were both felonies while his earlier (prior) adjudications were two misdemeanors, which clearly demonstrated an "escalating" pattern of less serious adjudications to more serious adjudications. In the case we now consider, the more serious adjudications were the earlier (prior) adjudications and the most recent was a misdemeanor adjudication, demonstrating a de-escalating pattern of the severity of *886 the adjudications. As such, In re J.M. clearly did not address the situation at issue in this case.
"Statutes must be construed to avoid unreasonable results, and there is a presumption that the legislature does not intend to enact useless or meaningless legislation." KPERS v. Reimer & Koger Assocs., Inc., 262 Kan. 635, 643, 941 P.2d 1321 (1997). When interpreting a statute, this court should give words in a statute their ordinary and plain meaning. State v. Donlay, 253 Kan. 132, 134, 853 P.2d 680 (1993).
Relevant to K.S.A. 38-16,129, "chronic" is defined as "marked by long duration or frequent recurrence: not acute." Webster's New Collegiate Dictionary, 199 (1973). "Escalating" is defined as increasing "in extent volume, number, amount, intensity, or scope." Webster's New Collegiate Dictionary, 389 (1973). "Prior" is defined as "earlier in time or order." Webster's New Collegiate Dictionary, 915 (1973). "Present" may be defined as "now existing or in progress," "existing in something mentioned or under consideration," or "constituting the one actually involved, at hand, or being considered." Webster's New Collegiate Dictionary, 910 (1973).
Under K.S.A. 38-16,129(a)(3), four ways are listed in which a juvenile offender may be classified as a chronic offender II, escalating felon. All four definitions, including K.S.A. 38-16,129(a)(3)(B)(i), involve prior less serious adjudication(s) followed by a more serious present felony adjudication. This differentiation in the time that the offenses were committed is necessary to establish that the juvenile offender is indeed a chronic, escalating felon, i.e., that his offenses were frequently occurring and increasing in severity. If the legislature were simply concerned with the number and type of adjudications without reference to when they occurred, the juvenile offender in this case would have met those requirements in his first case, and the term "chronic offender II, escalating felon" would have no meaning.
Although both cases were technically open at the probation violation hearing, the intent of the legislature was to categorize the offenses by the date of adjudication by including the terms prior and present in the statute. Without using dates, it is difficult to *887 categorize an adjudication as prior or present, and it could result in much confusion as to which cases were prior and which cases were present if all open cases were considered present. The legislature could have omitted the terms prior and present but that would defeat its intent to provide for more severe punishment options as the severity of a juvenile offender's offenses increases. As this court has recognized, "[o]ur legislature has established in painstaking detail, a comprehensive sentencing scheme [in the KJJC], essentially complete as written." 274 Kan. at 822.
In this case, the January 2001 (00JV332) case involving the felony adjudication, was clearly "earlier in time or order" to the December 2001(01JV265) case involving the misdemeanor adjudication. Thus, the district court's conclusion that the defendant was not eligible for placement in a juvenile correctional facility under K.S.A. 38-16,129(a)(3)(B)(i) must be affirmed. We answer the question reserved by the State in the negative: A juvenile who has a prior adjudication as a felon and three prior misdemeanor adjudications with a present misdemeanor adjudication may not upon revocation of probation involving both prior and present adjudications be placed in a juvenile correctional facility as a chronic offender II, escalating felon, pursuant to K.S.A. 38-16,129(a)(3)(B)(i).
Appeal denied.