No. 70,196

LEE WRIGHT, *Appellee,* v. KANSAS WATER OFFICE, *Appellant.*
(881 P.2d 567)

Opinion filed September 22, 1994.

*David D. Plinsky,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Wesley A. Weathers,* of Weathers & Riley, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a novel civil service employment termination case. The primary questions are whether the plaintiff, a state classified employee whose position was declassified and terminated by the legislature, was employed by written contract and whether the plaintiff's wrongful termination claim is controlled by K.S.A. 60-511, a five-year statute of limitations. In resolving the statute of limitations issue, we consider the employment relationship of a classified civil service employee and the State.

### Background—The Legislative Termination

The plaintiff, Lee Wright, began working in the Kansas Water Office (KWO) in 1959 and held a classified position as hydrologist

in 1984. That year, the Kansas Legislature enacted S.B. 501 (K.S.A. 74-2614a), which declassified 17 KWO civil service employees and also directed their termination. Wright was among those terminated. Five years later, in *Darling v. Kansas Water Office*, 245 Kan. 45, 774 P.2d 941 (1989), we held that S.B. 501 was unconstitutional. Six of Wright's KWO co-workers were the *Darling* plaintiffs. Wright was the "other" person referred to in the *Darling* opinion. 245 Kan. at 47. He did not seek and obtain reappointment with the KWO as an unclassified employee, as 10 of his co-workers did. He did not join the six *Darling* plaintiffs in their pursuit of relief in the courts, which they eventually obtained. Wright did nothing about his termination for four years, until the district court in *Darling* held that S.B. 501 was unconstitutional. The stipulated facts indicate that Wright made a conscious decision not to join his co-workers, the *Darling* plaintiffs. The *Darling* plaintiffs, in addition to the administrative appeal filed with the Board, filed a separate action in the district court against the KWO and its director, testing the constitutionality of S.B. 501. The two actions were consolidated and reached us as *Darling*.

Wright first heard of the introduction of S.B. 501 through an announcement by the KWO Director at a staff conference in the early part of 1984. The Director advised Wright and other KWO employees not to speak with any legislators about the bill. Later, the Director called a staff meeting and informed the employees that it was beyond his authority to tell them not to talk to their legislators and that he really did not mean what he had said. Wright felt he could discuss the bill with legislators despite the Director's directions because "the stakes were very high." However, he elected not to do so. He did talk to a legislator at a social gathering and mentioned he felt S.B. 501 was a mistake.

Because of the humiliation he felt and his belief that he could not have worked amicably with the Director, Wright would not have accepted reinstatement at the KWO so long as the Director was there. This fact was not known until Wright's deposition in August 1990. Wright testified that since the Director has now left the KWO, he would accept reinstatement contingent upon: (1)

the offered position having the same level of responsibility as the one from which he was terminated, (2) the offered position being one for which he is qualified, and (3) his supervisor agreeing to an amicable relationship.

Wright believed that he had no legal recourse to the declassification of his position or his termination because these actions were accomplished through legislation. He was aware of the Board's refusal to entertain the appeal of the *Darling* plaintiffs, even though their appeal was filed within 30 days of termination.

Following the district court in *Darling*'s ruling that S.B. 501 was unconstitutional, Wright appealed his termination to the Civil Service Board (Board) under K.S.A. 75-2949(f). Appeals under K.S.A. 75-2949(f), however, must be .filed within 30 days after the challenged termination. The Board dismissed Wright's appeal on jurisdictional grounds.

Wright then sought relief from the Board's dismissal by filing a "Petition for Judicial Review" in the district court under the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* Wright named the KWO as defendant. In his petition, Wright argued that the KWO was estopped from asserting his failure to file within 30 days as a defense because: (1) The State's own unconstitutional and bad faith conduct prevented him from filing within the 30-day period; (2) KWO's notice of termination failed to advise him of the right to an appeal to the Board within 30 days as was required by statute; and (3) the State terminated him in a manner that would have rendered an appeal to the Board within the initial 30-day period futile because the Board would have declined jurisdiction.

## The District Court's Decision

The district court noted that the KWO arguments concerning the 30-day K.S.A. 75-2949(f) requirement are based on the presumption that Wright must exhaust administrative remedies before appealing. The district court concluded that exhaustion was not required in Wright's case, reasoning:

"The Kansas Civil Service Board admits to this limitation. [An administrative agency is not allowed to make final decisions on constitutionality of a statute.] In the related case brought by plaintiff's co-workers the Board dismissed the

case for lack of jurisdiction due to the fact plaintiffs were no longer classified employees and 'because the Board had no authority to determine the constitutionality of the legislation which had ordered their termination.' *Darling v. Kansas Water Office*, 245 Kan. 45, 53 (1989) (quoting the decision of the Shawnee Dist. Ct.). In the case currently before the court no administrative remedy was available to the plaintiff and therefore, he is not required to pursue an appeal before the Civil Service Board. Since plaintiff was not required to exhaust his administrative remedies the K.S.A. 75-2949(f) thirty (30) day time limit should not bar this action."

Acting *sua sponte*, the district court converted Wright's administrative law appeal under K.S.A. 77-607 to a Chapter 60 civil action for wrongful termination. The district court reasoned that Wright had no administrative remedy to pursue because his claim rested on the constitutionality of S.B. 501, upon which the Board could not pass. Thus, the case moved forward not as an administrative appeal but as a contract case, with the KWO defending Wright's legislative termination. The KWO filed a motion for summary judgment, alleging that Wright's claim of wrongful termination was barred by a statute of limitations or laches. The KWO asserted that Wright's claim arose out of an oral contract or, in the alternative, out of a liability created by statute.

The district court held that Wright had a binding written contract with the State. Consequently, although Wright's converted Chapter 60 civil action was filed 4 years and 122 days after termination, it was not time barred as the five-year statute of limitations, K.S.A. 60-511(1), controlled. The court awarded Wright damages for back pay, longevity pay, a health insurance differential, annual leave pay, costs for job search, and prejudgment interest. The district court also ordered reinstatement.

The KWO appeals. We exercise jurisdiction under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion).

We reverse the district court. Wright did not have a binding written contract with the State. K.S.A. 60-511(1) does not apply. Wright's wrongful termination claim is controlled by a three-year statute, K.S.A. 60-512(2), as "[a]n action upon a liability created by a statute other than a penalty or forfeiture."

## Discussion

The case was submitted to the trial court on an agreed stip-

ulation of facts and documentary evidence. We have the same opportunity as the trial court to examine and to determine what the facts and documentary evidence establish. Therefore, a de novo standard of review applies. *Hudgens v. CNA/Continental Cas. Co.*, 252 Kan. 478, Syl. ¶ 1, 845 P.2d 694 (1993).

We choose to decide the case as it is presented to us on appeal from the district court. We focus on the concepts of civil service, classified employee, written contract, and limitation of actions. We hold that Wright did not have a written contract with the State, and consequently, his converted Chapter 60 civil action filed 4 years and 122 days after termination is time barred. Our disposition of the appeal by the application of K.S.A. 60-512(2), a three-year limitation statute, negates the obligation to address the numerous other contentions raised by the KWO, including the propriety of the district court's *sua sponte* conversion of Wright's administrative appeal under the KJRA to a Chapter 60 civil action.

Whether Wright was employed under a written contract is relevant to the consideration of the statute of limitations question. K.S.A. 60-511(1) states: "The following actions shall be brought within five (5) years: (1) An action upon any agreement, contract or promise in writing."

The district court found that Wright was employed under a written contract composed of two documents. The first document was entitled "Personnel Requisition and Appointment Record." It contains Wright's name, address, and social security number, and it names the Kansas Water Resources Board as the employing agency. It also shows the place of work, the position number and title, salary, classification status, starting date, and various other information. The document is signed by Wright, with his oath and promise to faithfully discharge the duties of his employment, and is also signed by the executive director of the agency. The second document, entitled "Position Description," describes the duties and responsibilities of the position to which Wright was appointed.

Although we have reviewed the Kansas Civil Service Act (KCSA), K.S.A. 75-2925 *et seq.*, in previous cases, the characterization of a classified civil service employee's employment re-

lationship with the State under a breach of contract claim of wrongful termination is one of first impression.

We hold that the employment relationship between the State and Wright did not arise out of a written contract. Rather, the relationship is fixed by statute. The KCSA controls a classified civil service employee's employment status. The KCSA affords the right of continued employment in the absence of a legitimate cause for termination. The employment relationship of a classified employee to the State is one of statutory status.

Our holding does not preclude the possibility that a classified civil service employee might enter into a special contract of employment with an agency for particular tasks or a particular term in exchange for separate or additional consideration. In the instant case, however, Wright alleges no special circumstances beyond the fact of his classified employment, which he contends (and the district court concluded) was grounded in a binding written contract. We disagree.

Although the Public Employer-Employee Relations Act, K.S.A. 75-4321 *et seq.*, is not at issue in the case at bar, K.S.A. 75-4321(a)(4) provides a legislative signal for the characterization of public employment:

"(a) The legislature hereby finds and declares that:

. . . .

(4) there neither is, nor can be, an analogy of statuses between public employees and private employees, in fact or law, because of inherent differences in the employment relationship arising out of the unique fact that the public employer was established by and is run for the benefit of all the people and *its authority derives not from contract* nor the profit motive inherent in the principle of free private enterprise, *but from the constitution, statutes, civil service rules, regulations and resolutions."* (Emphasis added.)

See *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 803, 667 P.2d 306 (1983).

Other jurisdictions considering the issue have reasoned that the terms and conditions of employment in the civil service are not determined by a written contract between the State and the employee. Rather, the statutes and regulations of the appropriate agency or agencies control the relationship. See *Matter of Dower v. Poston*, 76 Misc. 2d 721, 725, 351 N.Y.S.2d 272 (1973); *Per-*

*sonnel Division v. St. Clair*, 10 Or. App. 106, 110, 498 P.2d 809 (1972).

In *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 246 Cal. Rptr. 609 (1988), the plaintiff was dismissed from a position with the Fresno County Department of Social Services. He appealed and ultimately was reinstated. He filed a claim for damages, alleging breach of an express and implied contract of employment. The court determined that Kemmerer had no contract with the county:

"Plaintiff's causes of action predicated upon the existence of a contract between him and the County are grounded upon the false premise that he served under a contract of employment which included an implied covenant of good faith and fair dealing. However, '. . . it is well settled in California that public employment is not held by contract but by statute. . . . Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that "[t]he terms and conditions of civil service employment are fixed by statute and not by contract." [Citations omitted.] Indeed, "[t]he statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith." ' " [Citations omitted.] 200 Cal. App. 3d at 1432.

Our recognition of the impact of the KCSA on Wright's employment is in accord with text authorities in the public employment law area.

"Most courts have held that public employment is a matter of status, not contract. . . . Attempts to utilize such concepts as express contract, oral representations as contracts-in-fact, promissory estoppel, fraudulent inducement, and handbooks and manuals (to show modifications of at-will employment status) have foundered because job security is deemed to be accorded only by operation of law." Silver, Public Employee Discharge and Discipline § 1.4, p. 1-10 (1989).

Silver further observes:

"The complex questions presented by this controversial wing of wrongful discharge law are somewhat reduced in public employment situations because courts generally hold that government employment is a matter of statutory status, not contract, even though particular employees or groups of employees may indeed have contracted for their services." Silver, § 21.1, p. 21-1.

We discussed the nature of the KCSA in *Kansas Dept. of SRS v. Goertzen*, 245 Kan 767, 780, 783 P.2d 1300 (1989). The legislature adopted the KCSA to provide all citizens an equal opportunity for public service. The KCSA also established conditions

of service and created a department of administration. See K.S.A. 1993 Supp. 75-3702a. The KCSA extended to the Director of Administration the power to recommend rules and regulations, including issues involving standards of performance, leaves of absence, transfers, layoffs, vacations, hours of work, and other conditions of employment. 245 Kan. at 780. In *Swezey v. State Department of Social & Rehabilitation Services*, 1 Kan. App. 2d 94, Syl. ¶¶ 5, 6, 562 P.2d 117 (1977), K.S.A. 1979 Supp. 75-2949 was interpreted to require that a valid cause be present to justify termination of a civil service employee. The KWO observes that Wright's theory rests upon the K.S.A. 75-2949(a) good cause requirement. The KWO reasons that but for the statute, Wright could be terminated for any or no reason. Thus, according to the KWO, Wright's claim is based solely on the violation of the statute. Consequently, the KWO maintains that Wright's cause of action can be interpreted as "[a]n action upon a liability created by a statute" that is barred by the three-year statute of limitations. K.S.A. 60-512(2). We agree.

A liability is "created by a statute" for purposes of K.S.A. 60-512(2) where liability for resultant damages would not arise but for the statute. A statute that merely provides a procedure for obtaining relief does not trigger K.S.A. 60-512(2); it must provide a new substantive right that does not otherwise exist at common law. See *Kirtland v. Tri-State Insurance Co.*, 220 Kan. 631, 633, 556 P.2d 199 (1976); *Hollinger v. Dickinson County*, 115 Kan. 92, 95, 222 Pac. 136 (1924); *Pretzel v. Fiss*, 84 Kan. 720, 723, 115 Pac. 536 (1911); *Pecenka v. Alquest*, 6 Kan. App. 2d 26, 28, 626 P.2d 802, *rev. denied* 229 Kan. 670 (1981). In *Alquest*, for example, the Court of Appeals held that the three-year limitations period of K.S.A. 60-512(2) applied to the plaintiffs' action under the veteran's preference law, K.S.A. 73-201 *et seq.* The *Alquest* plaintiffs, both of whom were veterans, were discharged by Social and Rehabilitation Services (SRS) when their jobs were eliminated because of budgetary considerations. They sued the State, SRS, and several SRS employees, alleging that their veteran's preference rights were violated. The veteran's preference law requires state and city departments to retain equally qualified vet-

erans over non-veterans when making reductions in force. The Court of Appeals concluded that the veteran's preference law creates an implied civil right of action for damages where none would otherwise exist, and therefore this action was subject to the three-year statute of limitations under K.S.A. 60-512(2). See *Pecenka v. Alquest*, 232 Kan. 97, 652 P.2d 679 (1982), for the sequel dismissing the veterans' claims on the basis of jurisdiction.

Wright, in his amended pretrial questionnaire, states his claim as one for wrongful termination. He contends that he was terminated without a merit-based reason, contrary to the provisions of the KCSA. He was not terminated because of deficiencies in his work performance (K.S.A. 75-2949e) or because of conduct detrimental to State service (K.S.A. 75-2949f). Wright argues that his contract of employment included his rights under the KCSA. Consequently, the contract was breached by his termination without good cause and a hearing. The focus of his claim is that as a classified civil service employee, he held a right not to be terminated without a hearing and without good cause. He would not have had these rights but for the KCSA. Thus, his wrongful termination action clearly relies on the KCSA to provide the basis of liability he seeks to impose on the KWO.

K.S.A. 75-2949(a) provides that "no permanent employee in the classified service shall be dismissed . . . for . . . nonmerit reasons." Personnel administration actions "shall be based on merit and fitness to perform the work required and shall provide fair and equal opportunity for public service." K.S.A. 75-2925. The grounds for dismissal for deficiencies in work performance are set forth in K.S.A. 75-2949e, while K.S.A. 75-2949f lists examples of personal conduct detrimental to the State. Wright, on the other hand, was legislatively dismissed and reasons that because we declared S.B. 501 unconstitutional in *Darling*, his relationship to the State was restored to that of a statutorily protected classified employee. We agree with Wright that he was wrongfully terminated. Unfortunately, he waited too long to seek relief. The case at bar presents a unique factual setting. In the vast majority of civil service employment termination cases, exhaustion of administrative remedies is required under K.S.A. 75-2949(f) and, thus, the statute of limitations for an independent action is not a factor.

In *Goertzen,* we observed: "By creating a civil service law that granted permanent status to a state employee, the Kansas Legislature gave the employee an interest in continued employment that the state cannot infringe arbitrarily." 245 Kan. at 780. Wright's permanent status and interest in continued employment was created by the KCSA. The State's liability as asserted by Wright arises from the KCSA. We hold that Wright's breach of employment contract claim for wrongful termination as converted by the trial court and pursued by Wright is an action "upon a liability created by a statute" and consequently must have been filed within three years of his termination. K.S.A. 60-512(2).

Reversed.