No. 96,793

KAREN BURNETT, *Plaintiff*, v. SOUTHWESTERN BELL TELEPHONE, L.P., *Defendant*.

(151 P.3d 837)

Opinion filed February 2, 2007.

*Alan V. Johnson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, argued the cause and was on the brief for plaintiff.

*Bruce A. Ney*, of Southwestern Bell Telephone, L.P., of Topeka, argued the cause, and *Timothy S. Pickering* and *Melanie N. Sawyer*, of Topeka, were with him on the brief for defendant.

The opinion of the court was delivered by

DAVIS, J.: This case comes before us on a certified question from the United States District Court for the District of Kansas, pursuant to K.S.A. 60-3201. Karen Barnett filed suit in federal court against her former employer, Southwestern Bell Telephone, L.P. (Southwestern Bell), alleging that she was wrongfully terminated in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2611 *et seq.* (2000), and § 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140 (2000).

Southwestern Bell moved to dismiss Barnett's ERISA claim on the basis that it was brought more than 2 years after she was terminated, and thus is barred by the 2-year statute of limitations under K.S.A. 60-513(a)(4). Barnett countered that the proper stat-

ute of limitations was the 3-year period in K.S.A. 60-512(2), which applies to liabilities created by statute. Because the statute of limitations issue could be determinative of Barnett's claim under ERISA, and because the district court found no controlling Kansas precedent on this issue, it certified the question to this court.

## CERTIFIED QUESTION

WITH RESPECT TO PLAINTIFF'S CLAIM THAT DEFENDANT TERMINATED HER EMPLOYMENT TO PREVENT HER FROM OBTAINING LONG-TERM DISABILITY BENEFITS UNDER ERISA, WHAT IS THE APPLICABLE STATUTE OF LIMITATIONS?

## ANSWER

For reasons set forth in this opinion, our answer to the certified question is that the plaintiff's claim is one created by statute which is governed by a 3-year statute of limitations in accordance with K.S.A. 60-512(2).

## *FACTS*

The following factual account is taken directly from the certification order from the United States District Court in this case:

"From August of 1996 through March of 2003, plaintiff worked as a service representative for defendant. Defendant has an income disability plan which offers both short-term and long-term disability benefits. On August 13, 2002, plaintiff began experiencing serious health problems and was unable to work. A doctor diagnosed plaintiff with depression and post-traumatic stress disorder. Plaintiff applied for FMLA leave and short-term disability benefits, which defendant approved for August 30 through November 14, 2002. On December 4, 2002, defendant notified plaintiff that it was denying short-term disability benefits effective November 15, 2002. Plaintiff appealed, and received short-term disability benefits through December 15, 2002. On an unspecified date, plaintiff's immediate supervisor notified her that if she did not return to work on December 16, 2002, defendant would terminate her employment. On December 17, 2002, shortly after plaintiff arrived at work, someone sent her home because of serious health conditions. Plaintiff was hospitalized from December 26 through December 31, 2002, and she received short-term disability benefits from December 17, 2002 through January 31, 2003. Plaintiff returned to work in February of 2003. On February 6, 2003 defendant told plaintiff that absences dating back to October 29, 2002 had been 'unprotected' time. On February 8, 2003, defendant placed plaintiff on 'de-

cision making leave' for unsatisfactory attendance. Two days later, plaintiff returned to work.

"From March 6 to March 16, 2003, plaintiff was hospitalized for an acute pulmonary embolism. On March 21, 2003, defendant terminated her employment for unsatisfactory attendance. Plaintiff received approval for short-term disability benefits from March 13 through May 4, 2003.

"On December 9, 2005, plaintiff filed suit, asserting that defendant (1) violated the FMLA by terminating her employment because she took protected medical leave under the FMLA (Count I); and (2) wrongfully discharged her to prevent her from obtaining long-term disability benefits under ERISA (Count II). Defendant seeks to dismiss Count II of plaintiff's claim under Rule 12(b)(6), Fed. R. Civ. P., arguing that the statute of limitations for ERISA claims bars plaintiff's claim for relief on Count II."

On its own motion pursuant to K.S.A. 60-3201, the United States District Court for the District of Kansas certified this question regarding the applicable statute of limitations for actions brought under ERISA § 510, 29 U.S.C. § 1140, to this court on June 14, 2006.

## STANDARD OF REVIEW

This court has jurisdiction to answer questions certified to it by a United States District Court under K.S.A. 60-3201, which provides that the Kansas Supreme Court may answer certified "questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state." Because certified questions must, by definition, turn on legal issues, this court's review of such questions is unlimited. *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 764-65, 986 P.2d 377 (1999). Furthermore, the interpretation of a statute is a question of law over which this court has unlimited review. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006). "The answer to a certified question must be based on [Kansas] precedent, not on federal rulings interpreting Kansas law." *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 554, 85 P.3d 1183 (2004) (citing *Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 201-02, 967 P.2d 295 [1998]).

*Federal Courts' Determinations of Claims Predicated Upon a Violation of Rights Under § 510 of ERISA (29 U.S.C. § 1140)*

Before discussing the legal question regarding the proper analogue to a § 510 ERISA claim under Kansas law, it is helpful to review how federal courts have treated the nature of ERISA claims generally, and § 510 in particular, with regard to the appropriate statute of limitations.

*ERISA*

ERISA, first enacted in 1974, is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983). ERISA's initial policy statement explains the policy of the respective chapter of the Act:

"It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b) (2000).

"It is hereby further declared to be the policy of this chapter to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance." 29 U.S.C. § 1001(c).

One of the primary reasons for Congress' adoption of such a broad-sweeping statute was "to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.' " *Egelhoff v. Egelhoff*, 532 U.S. 141, 148, 149 L. Ed. 2d 264, 121 S. Ct. 1322 (2001) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 96 L. Ed. 2d 1, 107 S. Ct. 2211 [1987]).

In enacting ERISA, Congress recognized that "[u]niformity is impossible, however, if plans are subject to different legal obligations in different states." *Egelhoff*, 532 U.S. at 148. To effectuate

this goal of uniformity in application and administration, ERISA contains a provision that specifically preempts any state law that "relates to" employee benefits plans. *See* 29 U.S.C. § 1144(a) (2000) ("the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title"). The Act defines "'State law'" to include "all law, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). The United States Supreme Court has interpreted ERISA's preemption provision broadly, finding that a statute "relates to" an ERISA program for preemption purposes " 'if it has a connection with or reference to such a plan.' " *Egelhoff*, 532 U.S. at 147 (citing *Shaw*, 463 U.S. at 97).

### Other Courts' Analysis of the Applicable Statute of Limitations for Claims Under § 510

Section 510 of ERISA provides

"It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section." 29 U.S.C. § 1140.

Section 502 of ERISA, 29 U.S.C. § 1132 (2000), provides the civil enforcement mechanism for actions brought under Chapter 5 of the Act, including § 510. See *Teumer v. General Motors Corp.*, 34 F.3d 542, 544 (7th Cir. 1994). Among other actions it recognizes, § 502 states that a civil action under ERISA may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A participant or beneficiary may also bring an action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

ERISA does not expressly provide a limitations period for actions brought under Chapter 5 of its provisions (which includes §§ 502 and 510). *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1199 (10th Cir. 1990). In the absence of an explicit limitations period for a federal statute, the " 'general rule [is] that statutes of limitation are to be borrowed from state law.' [Citation omitted.]" *Held*, 912 F.2d at 1200. Thus, "[b]ecause ERISA does not contain a statute of limitations for claims brought under Section 502, courts look to the statute of limitations for (a) the most analogous state law claim (b) in the state with the most significant relationship to the matter in dispute." *Muller v. American Management Ass'n Intern.*, 368 F. Supp. 2d 1166, 1172 (D. Kan. 2004) (citing *Held*, 912 F.2d 1197). In the instant case, it is undisputed that Kansas law should apply and the question we must resolve is which of Kansas' state law claims is "most analogous" to a claim under § 510 of ERISA and, thus, which statutory limitations period applies.

Federal district and circuit courts have come to differing conclusions when attempting to determine which limitations period is most analogous to a claim under § 510 of ERISA. In *Held*, the Tenth Circuit, applying New York law, found that two different limitations periods were appropriate for "two distinct causes of action" brought under § 510. 912 F.2d at 1203. The court explained that, before determining which statute of limitations applied to the plaintiff's claim under § 510, the appellate court was first obliged to consider "the characterization of appellant's claims." 912 F.2d at 1203. After some discussion, the court concluded that the plaintiff had brought both a claim for injunctive relief under § 502(a)(3) and a claim for interference with enjoyment of benefits under § 502(a)(1)(B). 912 F.2d at 1203. The court then determined that these claims should be subject to the limitations periods for em-

ployment discrimination and for breach of contract, respectively. 912 F.2d at 1205-06.

Judge Ebel dissented from the appellate panel's parsing of the plaintiff's § 510 claims. Instead, he wrote that "plaintiff's sole claim is predicated upon a violation of his rights under section 510 of ERISA (29 U.S.C. § 1140), as enforced through 29 U.S.C. § 1132." *Held*, 912 F.2d at 1207 (Ebel, J., dissenting). According to Judge Ebel, plaintiff's entire claim under § 510 should have been subject to New York's statute of limitations for employment discrimination.

In *Myers v. Colgate-Palmolive Co.*, 26 Fed. Appx. 855 (10th Cir. 2002), the only instance (albeit unpublished) where the Tenth Circuit considered the appropriate Kansas statute of limitations to be applied to § 510 actions, the court determined that the appropriate period was the 2-year limitation on claims for wrongful discharge under K.S.A. 60-513(a)(4)—not the 5-year period for breach of contract under K.S.A. 60-511(1). Federal district courts, however, have generally come to the opposite conclusion with regard to civil actions brought under § 502. See *Muller*, 368 F. Supp. 2d at 1172 (applying the 5-year limitations period for contractual disputes to a claim brought under § 502 of ERISA); *Caldwell v. Life Ins. Co. of North America*, 959 F. Supp. 1361, 1367 (D. Kan. 1997) (finding the appropriate statute of limitations for claims brought pursuant to § 502 is that for written contracts).

While *Held* remains the only published Tenth Circuit opinion to discuss the appropriate statute of limitations to apply to § 510 of ERISA (applying New York law), the decisions of other federal circuits shed a different light on the matter. The Seventh Circuit, applying Illinois law, provided a lengthy discussion of the question we deal with in *Teumer v. General Motors Corp.*, 34 F.3d 542. The Seventh Circuit was called upon to determine whether the Illinois statute of limitations for contractual disputes or for retaliatory discharge was most analogous to an ERISA action brought under § 510. The *Teumer* court acknowledged that the "variant nature of the several rights recognized in that one provision" had led to a "lack of consensus" among states and circuits as to which limitations period should apply:

"Section 510 protects workers against several distinct abuses: the disruption of employment privileges to *prevent* (*i.e.* interfere with) the vesting or enjoyment of benefit rights . . . ; the disruption of employment privileges to *punish* (*i.e.* retaliate for) the exercise of benefit rights; and the disruption of employment privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act. The circuit courts which have been called upon to apply statutes of limitations to actions brought to enforce § 510 rights have reached disparate conclusions as to which state causes of action best approximate the federal remedy." 34 F.3d at 547.

Having examined the broad array of rights protected by § 510, the *Teumer* court reasoned that the first category of right—prevention of interference with the vesting or enjoyment of benefits—found its closest analogy in the good faith and fair dealing principles of contract law. 34 F.3d at 548. On the contrary, the two other categories—prevention of retaliatory action for exercising protected rights or for whistle-blowing—were most akin to torts of wrongful termination or retaliatory discharge. 34 F.3d at 547-48. The court was therefore confronted with the decision whether to apply the statute of limitations most analogous to the particular cause of action brought (as the Tenth Circuit did in *Held*) or to select one statute of limitations that would apply to all actions, regardless of their nature, brought under § 510 of ERISA. The court explained the reasoning of its analysis in detail:

"If we were to stop here, we would apparently be faced with competing analogues to § 510 rights in state law. We could accordingly decline to seek *a* best parallel cause of action to § 510 generally and instead adopt a practice of looking to the one that provides the closest theoretical fit to the particular § 510 violation alleged. . . . However, doing so would be shortsighted for several reasons. First of all, there is much to be said, in the interest of simplicity, for selecting a single most appropriate statute of limitations for all claims under this important and often-invoked federal statutory safeguard. In *Wilson v. Garcia*, [471 U.S. 261, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985),] the Supreme Court concluded that '[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach' for civil rights actions under 42 U.S.C. § 1983. 471 U.S. at 275. . . . While § 510 certainly is not the font for a wide diversity of claims that § 1983 has become, the analytic distinction between the two primary wrongs that it targets, although perhaps sharp in theory, will often blur in the context of real disputes. Attempts to preserve the distinction solely for the purpose of borrowing limitations statutes will frequently be artificial and could contribute to a perception that arbitrariness

or even result-orientation controlled the ultimate selections in particular cases, the sort of shortcomings that *Wilson* court sought to avert. *See id.* at 272 n.24. . . . More precisely, when an employee is already drawing benefits under a plan at the time he is discharged, retaliation and interference are, in practical effect, inseparable theories. That is, because such motives are so similar and, in an actual case, probably mixed, it seems fruitless to try to distinguish anger with the employee's past exercise of his benefit rights from a desire to forestall the future enjoyment of those same benefits. Besides the practical difficulty of such a task, embarking on it at all assumes the existence of a motivational process perhaps more nuanced than that of most individual and corporate decisionmakers. In areas like this one, where the law's dependence on experience is great, it is sometimes best to resist the natural tendency to resort to ever finer legal distinctions." 34 F.3d at 548-49.

Having undergone this analysis, the court determined that, even though the facts there were most analogous to a contract dispute, the interests of uniformity and simplicity prevailed. Thus, the court held that the Illinois limitations period relating to retaliatory discharge should apply to all actions brought under § 510 in that state. 34 F.3d at 549-50. See also *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 335 (2d Cir. 1997) (citing the Seventh Circuit's decision in *Teumer* and concluding that "a single statute of limitations should govern all ERISA claims under section 510").

Rather than determining of its own accord which Kansas statute of limitations should apply to the present action, the district court in this case certified the question to this court for an answer as to the appropriate statute of limitations for Burnett's claim under § 510 of ERISA under Kansas law.

*Characterizing Burnett's Claim Under Kansas Law*

In order to determine which of Kansas' statutory limitations periods applies in this case, this court must determine which state law claim is "most analogous" to the present action brought under § 510 of ERISA. The resolution of this issue first requires a threshold examination of "the characterization of [Burnett's] claims." *Held*, 912 F.2d at 1203; see also *Teumer*, 34 F.3d at 546-47 ("This requires us to 'characterize the essence' of the federal claim in question and find the most analogous cause of action in Illinois law.").

Kansas law recognizes (at least) three distinct categories of causes of action for injuries to individual rights. A cause of action

may be found in tort or contract, or it may be statutorily created. While a liability created by statute may often seem similar to related actions at common law, this court has repeatedly held that a statutory action in this state is *sui generis*—that is, it is neither a contract action nor a tort action, but something entirely its own. See, *e.g.*, *Kelly v. Primeline Advisory, Inc.*, 256 Kan. 978, 983, 889 P.2d 130 (1995) (distinguishing a statutory action for securities fraud from a tort action for fraud, and applying the 3-year limitations period to the securities fraud action); *Wright v. Kansas Water Office*, 255 Kan. 990, 995, 881 P.2d 567 (1994) (distinguishing the employment disputes of civil service agents, whose employment arises under statute and is subject to the 3-year statute of limitations, from employment disputes of private parties, whose employment arises under contract).

For each of these categorical causes of action, the Kansas Legislature has designated mutually exclusive statutes of limitations with three different durations. See K.S.A. 60-511(1) (5-year limitations period for contractual actions); K.S.A. 60-512(2) (3-year limitations period for statutorily created actions); K.S.A. 60-513 (2-year limitations period for tort actions). The parties in this case have specifically raised the applicability of the 3- and 2-year statutes of limitations in K.S.A. 60-512 and K.S.A. 60-513, respectively. In particular, K.S.A. 60-512(2) states that "[t]he following actions shall be brought within three (3) years: . . . (2) An action upon a liability created by a statute other than a penalty or forfeiture." K.S.A. 60-513(a)(4) provides that "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated" shall be brought within 2 years. While not raised by the parties, K.S.A. 60-511(1), which applies a 5-year limitations period to contractual disputes, also looms in the background.

In order to determine which of these limitations periods applies to Burnett's claim under § 510 of ERISA, we must first consider whether Burnett's cause of action is most analogous to a tort action, a contract action, or a statutorily created action under Kansas law. A determination of this sort in Kansas, like the characterization of a federal action under ERISA, is grounded in the long-recognized principle that "the nature of the cause of action determines the

applicable statute of limitations." *Kirtland v. Tri-State Insurance Co.*, 220 Kan. 631, 632, 556 P.2d 199 (1976). The *Kirtland* court explained that the purpose of this maxim is "to make the right to be enforced, not the procedure, the test as to which statute of limitations applies. (51 Am. Jur. 2d, Limitations of Actions, § 62, pp. 640-641.)" 220 Kan. at 632.

Defendant Southwestern Bell argues that Burnett's claim under § 510 of ERISA was most analogous to a common-law claim for retaliatory discharge, which Kansas courts have held subject to the 2-year statute of limitations "for injury to the rights of another, not arising on contract, and not herein enumerated." See *Myers v. Colgate-Palmolive Co.*, 26 Fed. Appx. 855, 864 n.14; *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 464, 790 P.2d 404 (1990). Barnett counters that the most analogous claim is a statutory claim for employment discrimination and cites this court's decisions in *Wagher v. Guy's Foods, Inc.*, 256 Kan. 300, 885 P.2d 1197 (1994), and *Wright v. Kansas Water Office*, 255 Kan. 990, for her contention that the 3-year limitations period for "liability created by statute" should apply.

*Did ERISA create the liability for actions brought under § 510?*

This court has explained that statutes must be " ' "construed to avoid unreasonable results," ' " and " ' "[t]here is a presumption that the legislature does not intend to enact useless or meaningless legislation." ' [Citation omitted.]" *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997). Furthermore, this court interprets statutes in such a way to give words their ordinary and plain meaning. *In re D.M.*, 277 Kan. 881, 886, 89 P.3d 639 (2004).

As the federal district court noted in its certification order, the plain language of the two statutes at issue in this case favors the application of the 3-year limitations period. This action arises under ERISA, a federal statute. The language of the 2-year limitations period, which applies to actions "for injury to the rights of another, not arising on contract, and *not herein enumerated*," gives credence to this reading. (Emphasis added.) K.S.A. 60-513(a)(4). *This* "catchall phrase" indicates that K.S.A. 60-513(a)(4) should only

.

apply if there is no other limitations period that encompasses the injury in question.

As this court explained in *Hollinger v. Dickinson County*, 115 Kan. 92, 93-94, 222 Pac. 136 (1924),

"[i]f all actions which are brought 'for injury to the rights of another, not arising on contract' are withdrawn from the class described as based upon a 'liability created by statute, other than a forfeiture or penalty,' it would seem that there would be nothing left, and this portion of the three-year provision would have no field of operation; for every cause of action involves a right of the plaintiff, a duty of the defendant, and a 'delict or wrong done by the defendant which consisted in a breach of such primary right and duty.' (Pomeroy on Remedies and Remedial Rights, 2d ed., § 453.)"

The *Hollinger* court distinguished between actions with liability created by statute, on the one hand, and actions involving "injury to another's preexisting rights, the remedy for which was [e]ffected by the statute, and which did not arise on contract" or statutes that "merely effected a procedural change, eliminating a defense to which the plaintiff's claim for injuries due to the defendant's neg-ligence would otherwise have been open," on the other. 115 Kan. at 95. According to the court, these latter actions did not implicate the 3-year provision, because the rights involved are not statutorily created; therefore, they would be subject to the 2-year limitations provision. *Hollinger*, 115 Kan. at 94.

Yet just as the 2-year limitations provision for "injury to the rights of another, not arising on contract" does not apply to all actions involving such injuries, "K.S.A. 60-512(2) does not apply to every statutory cause of action. It applies when a statute creates a new, substantive right not recognized at common law, but not when a statute merely affords relief for certain violations of existing com-mon-law rights. [Citation omitted.]" *Kelly v. Primeline Advisory, Inc.*, 256 Kan. at 983. As the Kansas Court of Appeals explained in *Pecenka v. Alquest*, 6 Kan. App. 2d 26, 28, 626 P.2d 802, *rev. denied* 229 Kan. 670 (1981),

"[i]t is not enough to simply state that there is an injury to the rights of another to remove the cause of action from the operation of the three-year statute of limitations. Rather, the inquiry must be whether the statute created the cause of action. Thus, at 51 Am. Jur. 2d, Limitation of Actions § 82, p. 659, it is stated:

'A statute "creates" no liability, as regards the applicability of a statute of limitations with respect to an action to recover upon a liability created by statute, unless it discloses an intention, express or implied, that from disregard of the statutory command a liability for resultant damages shall arise which would not exist except for the statute. Clearly, an action is not based upon a liability created by statute if the right is one which would exist at common law in the absence of statute.' "

This court has similarly explained that "K.S.A. 60-512(2) applies when a statute creates a liability where liability would not exist but for the statute. If the statute merely provides a procedure for obtaining relief, it does not trigger K.S.A. 60-512(2)." *McCormick v. City of Lawrence*, 278 Kan. 797, 799, 104 P.3d 991 (2005) (citing *Wright*, 255 Kan. at 997); see also *Gehring v. State*, 20 Kan. App. 2d 246, 250, 886 P.2d 370 (1994), *rev. denied* 256 Kan. 994 (1995) ("An action is not based upon a liability created by statute if the right would exist at common law without the statute. A statute is merely remedial if it does not give any new rights. [Citation omitted.]").

The resolution of whether Burnett's cause of action in this case is most analogous to a tort action for retaliatory discharge or a separate, statutorily created liability therefore turns on whether the liability described in § 510 of ERISA would exist at common law in the absence of the statute. " 'In the absence of an express or implied contract of duration or where recognized public policy concerns are raised, employment is terminable at the will of either party.' [Citation omitted.]" *Hysten*, 277 Kan. at 554. This court has explained that its recognition of causes of action for retaliatory discharge " ' "is limited to wrongful discharge in violation of state public policy clearly declared by the legislature or by the courts." ' *Flenker*, 266 Kan. at 204." *Hysten*, 277 Kan. at 555 (quoting *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, Syl. ¶ 4, 752 P.2d 645 [1988]).

Both parties to the present action agree that Kansas has not previously recognized a cause of action for wrongful or retaliatory discharge for claiming disability benefits under ERISA. Furthermore, Kansas law is preempted from recognizing such a state cause of action for the recovery of ERISA benefits due to ERISA's broad

preemption provisions in 29 U.S.C. § 1144. See *Egelhoff,* 532 U.S. at 146.

Burnett asserts that, because "no obligation previously existed under common law for discharging an employee to prevent her from obtaining long-term disability benefits under ERISA," ERISA "created" Southwestern Bell's liability, and the 3-year limitations period under K.S.A. 60-512(2) should apply. According to Burnett, the fact that Kansas has recognized causes of action for retaliatory discharge based on violations of other statutes does not lend itself to the conclusion that such a cause of action exists for violations of ERISA.

This argument finds support in Kansas case law. Previous opinions of this court demonstrate that a cause of action under a Kansas statute is subject to the 3-year statute of limitations in K.S.A. 60-512(2) unless the *same* cause of action, not merely a similar action, was available at common law. For example, courts have held that the Kansas Securities Act and Kansas Consumer Protection Act (KCPA) "create" causes of action, despite the actions' similarities to common-law fraud actions, because the statutes required different elements of proof. See *Kelly,* 256 Kan. at 983 (applying K.S.A. 60-512[2] to the Kansas Securities Act); *Haag v. Dry Basement, Inc.,* 11 Kan. App. 2d 649, 650, 732 P.2d 392, *rev. denied* 241 Kan. 838 (1987) (applying K.S.A. 60-512[2] to the KCPA). Similarly, in *Wright v. Kansas Water Office,* this court applied the 3-year statutory liability provision to actions under the Kansas Civil Service Act (KCSA), rather than the 5-year term for employment contracts, because the unique procedural rights guaranteed to civil servants by that statute would not have existed but for the Act. *Wright,* 255 Kan. at 998.

Southwestern Bell seeks to distinguish the decisions in *Wright* (involving the KCSA) and *Pecenka* (involving the veterans preference law for local governments), because these cases involved public rather than private employees. This argument is without merit. It misses the point that the *Wright* decision was based upon the fact that the KCSA created additional statutory rights for civil service employees. It matters little where the employees worked; the determining factor was that the KCSA (or similarly, the veterans'

preference statute) created rights and liability that had not existed before the statute was enacted.

Likewise, the *Wagher* court applied the 3-year provision to an action for gender discrimination under the Kansas Act Against Discrimination (KAAD). While other discrimination actions may have existed prior to *Wagher*, the court found that "the KAAD does impose the obligation *not to discriminate against women in employment* where no obligation previously existed under common law. Thus, the liability is created by statute, and K.S.A. 60-512(2) applies." (Emphasis added.) *Wagher*, 256 Kan. at 308.

These cases contrast sharply with the Kansas Court of Appeals' decision in *Gehring v. State*, 20 Kan. App. 2d 246, 886 P.2d 370 (1994), *rev. denied* 256 Kan. 994 (1995), where the court held the 3-year limitations period in K.S.A. 60-512(2) was not applicable to actions involving the Kansas Tort Claims Act (KTCA). In that case, the court determined that the KTCA merely abolished the State's immunity in some cases; it *did not create liability* within the meaning of K.S.A. 60-512(2). The *Gehring* court explained:

"Under the facts shown here, plaintiff's claim is based on ordinary negligence. The KTCA does not 'create' a cause of action like the highway defect statute, K.S.A. 60-301 (Weeks) (since repealed), the Kansas Consumer Protection Act, or the veterans' preference law. Instead, the KTCA removes the immunity granted governmental entities at common law. By eliminating a defense, the KTCA merely created a remedial, not a substantive change. Tort actions against the State are brought *pursuant to* the KTCA. Such are not brought *in violation of* the KTCA." *Gehring*, 20 Kan. App. 2d at 251.

Southwestern Bell argues that although Kansas courts have not yet recognized the specific cause of action here—retaliatory discharge based upon an employee's right to disability benefits under ERISA—they "have developed a well-settled common law cause of action for retaliatory or wrongful discharge accruing to workers as a matter of public policy." As evidence of this trend, Southwestern Bell cites *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981) (recognizing a retaliatory discharge claim for termination of employment for exercising rights under the Kansas Workers Compensation Act); *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988) (for whistle-blower actions); *Flenker v. Williamette*

*Industries, Inc.*, 266 Kan. 198, 967 P.2d 295 (1998) (under the Occupational Safety and Health Administration [OSHA]); and *Hysten*, 277 Kan. 551 (under the Federal Employer's Liability Act [FELA]).

In particular, Southwestern Bell relies heavily on *Myers*, an unpublished decision of the Tenth Circuit, and *Hysten*. In *Myers*, the Tenth Circuit found that "under Kansas law the statute of limitations to be applied to a § 510 ERISA claim based on the wrongful discharge of the plan participant is two years." *Myers*, 26 Fed. Appx. at 864. However, the *Myers* court did not consider the application of K.S.A. 60-512(2); it only considered K.S.A. 60-511 (the limitations period for contracts) and 60-513(a)(4). Moreover, the appellate court did not explain how it arrived at its conclusion that the plaintiff's claim was analogous to a state law retaliatory discharge action or undergo any meaningful discussion of Kansas law. Therefore, contrary to Southwestern Bell's assertions and without meaning disrespect to the Tenth Circuit, the outcome of that decision has little value to the present discussion—particularly in light of the fact that this court is not bound by federal decisions interpreting Kansas law when responding to certified questions.

In *Hysten*, this court recognized a cause of action for retaliatory discharge for an employee exercising his or her rights under FELA. The court there explained:

"The design and language of the Kansas Workers Compensation Act and the logic of *Murphy*, 6 Kan. App. 2d 488, persuade us that Kansas has a 'thoroughly established' public policy supporting injured workers' rights to pursue remedies for their on-the-job injuries and opposing retaliation against them for exercising their rights. It matters not that the vehicle for that exercise is a federal rather than a state statutory provision." *Hysten*, 277 Kan. at 561.

Southwestern Bell would read this language broadly to imply a cause of action for retaliatory discharge under ERISA. While the cause of action established by the *Hysten* court regarding FELA and the current action under ERISA have a number of similarities, the differences undermine Southwestern Bell's argument. This court has repeatedly held that to remove a cause of action that appears to have been created by statute from the 3-year provision

in K.S.A. 60-512(2), a party must demonstrate that the *same* cause of action (not a similar action) was available at common law.

This court reiterated this principle most recently in *McCormick v. City of Lawrence*, 278 Kan. 797. There, the court considered whether a violation of the strip and body search statutes, K.S.A. 22-2521 through 22-2523, was subject to the 3-year statute of limitations under K.S.A. 60-512(2). 278 Kan. at 797. This court found that although causes of action similar to those in the statutory provisions for these searches were recognized at common law (such as the Fourth Amendment right against illegal searches and seizures), there were "unique elements" to the particular cause of action raised that distinguished it from these common-law actions. 278 Kan. at 802, 806-07. Citing *Kelly v. Primeline Advisory, Inc.*, 256 Kan. 978 (applying the 3-year statutory liability period to actions under the Kansas Securities Act), and *Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649 (applying the 3-year statutory liability period to actions under the Kansas Consumer Protection Act), the *McCormick* court reasoned:

"[I]n both *Kelly* and *Haag* common-law causes of action existed, but the statutes created liability and in each case the elements were different from the common-law action. . . .

"The City concedes there are differences between the statutes [at issue involving strip and body searches] and the Fourth Amendment requirements but argues such differences are irrelevant. Essentially, the City's argument is that the appropriate test to be applied is whether McCormick would have had *any* cause of action at common law regardless of whether it is a different cause of action, while McCormick argues the appropriate test is whether he would have had the *same* cause of action at common law as he does under K.S.A. 22-2523.

"The City's argument is erroneous. . . . Under *Kelly* and *Haag*, the applicable test is whether a plaintiff would have had the *same* cause of action at common law, not *any* cause of action." *McCormick v. City of Lawrence*, 278 Kan. at 803-04.

On the most basic level, the problem with Southwestern Bell's position is that Kansas courts have not recognized a cause of action under ERISA; thus, no equivalent action existed at common law. The controlling question regarding the applicable statute of limitations in this case turns on whether Burnett's action under § 510 of ERISA can best be characterized as a tort action or a statutorily

created action. Under Kansas law, this question is answered by considering whether the disputed statute *created the right* on which the liability stands or merely *established a procedure* through which existing common-law rights should be enforced. See *McCormick*, 278 Kan. at 799. Because no substantive right to long-term disability benefits existed before ERISA was adopted, and because no such right is currently recognized in Kansas apart from ERISA, ERISA clearly created the liability described in § 510. As such, the most analogous claim in Kansas to Burnett's cause of action under ERISA is an action for liability created by statute, and the 3-year statutory period in K.S.A. 60-512(2) applies. Accord *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1242 (11th Cir. 1989) (determining that the appropriate statute of limitations under Georgia law for an action under § 510 of ERISA is the limitations period applying to statutory rights, not the period for torts or for contracts).

As an aside, it should be noted that, as the Seventh Circuit explained in *Teumer*, a large variety of actions may be brought under § 510, sounding in both contract and tort. This variation has led to different conclusions by courts attempting to "characterize" a particular action as either contract or tort, though such characterizations are often less than clear-cut. For example, while the parties to this action did not raise the possibility of K.S.A. 60-511(1), Barnett's claim that Southwestern Bell "wrongfully discharged her to prevent her from obtaining long-term disability benefits under ERISA" could plausibly be read as an action for interference with her contractual rights. See *Teumer*, 34 F.3d at 548. This observation is strengthened by the fact that no court which has examined the applicable Kansas statute of limitations for a cause of action under Chapter 5 of ERISA to date, excluding the present action, has considered the application of K.S.A. 60-512(2). Instead, federal courts considering the issue have applied either the 2-year limitations provision in K.S.A. 60-513(a)(4) or the 5-year provision for contractual disputes in K.S.A. 60-511. See *Caldwell*, 959 F. Supp. at 1367 (applying K.S.A. 60-511[1]); *Muller*, 368 F. Supp. 2d at 1172 (applying K.S.A. 60-511[1]); *Myers*, 26 Fed. Appx. at 863 (applying K.S.A. 60-513[a][4]).

While the Tenth Circuit has not adopted the "one section, one statute of limitations" approach that the Second and Seventh Circuits have regarding § 510 of ERISA, application of the statutory liability provision in K.S.A. 60-512(2) has the same desired effects of uniformity of application and avoidance of outcome determinacy. See *Sandberg*, 111 F.3d at 335; *Teumer*, 34 F.3d at 548-49. Because all liability under § 510 of ERISA is created by that statute, the 3-year limitations period in K.S.A. 60-512(2) is applicable to any such action requiring an analogy to Kansas law.

*Preemption*

This conclusion is bolstered by ERISA's broad preemption of any state law which "relates to" employee benefit plans. See 29 U.S.C. § 1144. While preemption was not argued by the parties or considered by any of the federal courts that have resolved this issue to date, it nevertheless plays an important role when determining the nature of a cause of action under Kansas law. As this court explained in *Coleman v. Safeway Stores, Inc.*, 242 Kan. at 811, any conclusion that a retaliatory discharge action may arise under Kansas law for violation of a federal statute implicitly requires a determination that the state law action would not be preempted by federal law. In other words, if this court concludes that a state cause of action for retaliatory discharge of ERISA rights is preempted by ERISA, we must also determine that Burnett's present claim may not be characterized as a tort.

In *Coleman*, this court recognized that preemption was an "important issue," but ultimately determined that the plaintiff there could bring a retaliatory discharge action for violation of the Workers Compensation Act because such an action was not preempted by federal labor law. 242 Kan. at 811, 813. See also *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988) (state law action for retaliatory discharge not preempted by § 301 of the Labor Management Relations Act [LMRA], 29 U.S.C. § 185). Similarly, this court found in *Flenker* that a retaliatory discharge claim for violation of OSHA could lie, as OSHA did not preempt such actions:

"Preemption is not an issue here. Willamette does not contend that OSHA preempts state common-law retaliation claims. The Tenth Circuit in a footnote to

its certification order says 'Congress did not intend for OSHA § 11(c) to occupy this field of law, nor does OSHA conflict with state law, thereby preempting it. [Citation omitted.]' Preemption is an application of law concept in which federal law must be applied to the exclusion of state law for uniformity of interpretation. [Citations omitted.]" *Flenker*, 266 Kan. at 202.

The preemption provisions discussed in these cases are far less comprehensive than the broad ERISA preemption applicable to § 510 claims. While it is not before this court to determine whether such a claim would be preempted by ERISA, such an outcome is extremely likely. Therefore, this case presents an interesting scenario where Kansas not only has not recognized a particular cause of action (retaliatory discharge under ERISA), but also is preempted from recognizing such an action in the future.

While federal courts deciding the most analogous state law statute of limitations for actions under § 510 of ERISA have largely discounted the preemption issue, it cannot be discounted when considering the applicable limitations period under Kansas law. The question for determining whether K.S.A. 60-512(2) should apply is whether a state law action exists at common law apart from the statute. In this case, no such law exists (as the parties note), and no state law action can exist apart from ERISA, as long as the preemption provision remains operational. Thus, the liability under § 510 arises only from the enactment of ERISA, confirming that K.S.A. 60-512(2) provides the appropriate limitations period.

## CONCLUSION

Southwestern Bell is, in essence, arguing that although Kansas has not recognized a cause of action for retaliatory discharge based on the denial of disability benefits under ERISA, and although it is preempted from recognizing such a cause of action by ERISA's own language, this court should nevertheless hypothesize that it *might* recognize such a cause of action in the absence of the federal statute, and thus apply the 2-year limitations period applicable to other wrongful discharge cases based upon the expressed public policy of this state. Not only is this reasoning riddled with hypotheticals, it is an incorrect statement of the applicable test under Kansas law.

The determination of the applicable statute of limitations in this case requires this court to ascertain the most analogous cause of action under Kansas law to Burnett's action under § 510 of ERISA. The question to be answered in this state is whether the same cause of action for retaliatory discharge of ERISA rights (not a similar cause of action) would be recognized at common law in the absence of ERISA. If no such cause of action did or can exist, as is the case here, then the claim is most analogous to a state action for liability created by statute, and Kansas law dictates that the 3-year statute of limitations under K.S.A. 60-512(2) applies.

ERISA is a comprehensive statute, both defining protected rights (such as the long-term disability rights at issue here) and establishing the remedies for violations thereof. These remedies are not state law causes of action for retaliatory discharge, but are creatures of statute. In the absence of the statute, no similar right or action was recognized at common law. Therefore,

"[t]he present action is one upon a liability created by statute. Without the statute there would be no basis whatever for the plaintiff's claim. [Citation omitted.] The statute giving the right of action is not one relating to remedy or procedure; it concerns the substantive rights of the parties and imposes an obligation where none before existed." *Hollinger v. Dickinson County*, 115 Kan. at 95.

We conclude that the claim involved is brought under § 510 of ERISA, which is based on liability created by statute. Thus, K.S.A. 60-512(2) provides the appropriate statute of limitations.

ALLEGRUCCI, J., not participating.
LOCKETT, J., Retired, assigned.